(22 App. Div. 441.)

TOWNSEND v. VAN BUSKIRK et al.

(Supreme Court, Appellate Division, Second Department. November 30, 1897.)

RES JUDICATA—PARTIES AFFECTED.
    One T. was married in 1863, in England. Defendant S., who was born in 1864, was the sole offspring of the marriage. In 1867, T. left his wife, and came to America, where one C. lived with him as his wife, in New Jersey, and several children were born to them. His wife in England died in 1883. In 1888, C. filed a petition in chancery in New Jersey, where the court had jurisdiction over the parties, averring her marriage to T. in 1867, and alleging acts of infidelity on T.'s part, and praying a divorce. T.'s answer denied the marriage with petitioner. Thereafter a valid decree was entered, reciting that the marriage between T. and C. had been satisfactorily proved, and dissolving the same. In an action in New York to partition certain real estate of which T. died seised, and in which the parties were all children of T., *held*, that the decree entered in New Jersey, although to some extent in rem, did not estop defendant S., the child of the English marriage, from denying the legitimacy of the offspring of T. and C.

Appeal from special term.

Action by Francis H. Townsend against Mary Van Buskirk and others. Judgment for plaintiff, and Julia Mary Snell appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and HATCH, JJ.

Rudolph F. Rabe, for appellant.
James C. Foley, for respondent.

CULLEN, J. This action was brought to partition certain real estate of which one Thomas W. Townsend died seised. Townsend died intestate, and the several parties to the action claim as his heirs at law. Concededly, the parties are all children of Townsend, but the appellant, Julia Mary Snell, claims that the children other than herself are illegitimate, and not entitled to inherit. This is the only controversy in the case. It appears by the evidence that Townsend, a resident of Great Britain, was married to Sarah Ann Stickolorum, at London, on September 21, 1863. They lived together until Townsend left England, for America, in 1867. The appellant, Snell, is the sole living offspring of that marriage. She was born June 27, 1864. Townsend came to this country with one

Susanna H. Croot, with whom he lived as her husband until a decree of divorce was granted, in the state of New Jersey, on February 14, 1890. Sarah Ann Stickolorum survived until the 10th day of December, 1883. It is claimed that a marriage was solemnized between Townsend and Susanna H. Croot in April, 1867, before they left England. Of this fact there is no evidence except the recitals in the decree of divorce. However, as already stated, the parties lived together in the state of New Jersey as husband and wife, and children were born to them, four of whom are now living. In 1888, Susanna H. Townsend (or Croot) filed her petition in chancery, averring her marriage to Townsend, at the city of London, in April, 1867, and alleging that during the years 1886 and 1887 the defendant had committed adultery. She prayed that she might be divorced from her said husband for the cause aforesaid. Townsend answered, denying the marriage between the petitioner and himself. Thereafter, and in February, 1890, a decree was made by the chancellor, dissolving the marriage between the parties, which decree recited that the marriage between the petitioner and the defendant had been satisfactorily proven. The trial court held that the decree in chancery was conclusive evidence that the petitioner was the wife of Townsend up to the time of granting the decree, and estopped the appellant from denying the legitimacy of the offspring of Townsend and the petitioner. The correctness of that ruling is the principal, if not the only, question presented by this appeal.

It is conceded that the courts of New Jersey had complete jurisdiction over the parties to the divorce action, and that the decree therein entered was valid. The rule that the estoppel of a former judgment extends not only "to every material matter within the issues which was expressly litigated and determined, and also to those matters which, although not expressly determined, are comprehended and involved in the thing expressly stated and decided, whether they were or were not actually litigated or considered," cannot be gainsaid. Pray v. Hegeman, 98 N. Y. 351. It seems to me that the determination that the parties sustained the relation of husband and wife was necessarily involved in the decree of the court dissolving that relation. It was an essential element of the petitioner's cause of action that she was at the time the wife of the defendant. Hence. in any subsequent action between the petitioner and her husband or persons claiming under the husband, whenever the question of the existence of her marriage became a material inquiry, the decree in the divorce proceeding was conclusive on that question. The parties to this action are in privity with Townsend, the defendant in the divorce action, and claim as his heirs at law. But the general rule is, to render a judgment in one action evidence in another action, either between the parties or their privies, the estoppel must be mutual. "Nobody can take benefit by a verdict that had not been prejudiced by it had it gone contrary." Freem. Judgm. § 159; Gilb. Ev. 28. Now, while all the parties to this action are in privity with their father, Townsend, the intestate, I can see no privity between any of them and the alleged second wife, the mother of the parties other than the appellant. They claim.

no title or estate from or under their mother. "Kinship, whether by affinity or consanguinity, does not create privity, except where it results in the descent of an estate from one to another. Therefore there is no privity between husband and wife, or parent and child, or other relatives, when neither of them has succeeded to an estate or interest in property formerly held by the other." Freem. Judgm. § 162. Hence, within the general rule, the judgment in the divorce action would not be competent evidence in an action between the heirs at law of one of the parties.

There is, however, a class of judgments which is an exception to the general rule. Judgments which are termed "judgments in rem" are said to conclude, not only the parties to it and their privies, but the whole world. An action for divorce is, to a certain extent, an action in rem. In Moore v. Hegeman, 92 N. Y. 521, one Moore, against whom his wife had obtained a judgment of divorce for his adultery, remarried in this state that wife. Thereafter she brought another action for divorce. In the second action it was adjudged that the remarriage was void, by reason of the statutory prohibition. Moore subsequently married another woman, without the state, and the legitimacy of the issue of that marriage was assailed, on the ground that the marriage was void, because of the second marriage of Moore with his first wife. The court of appeals seems to have entertained grave doubts whether the remarriage of the defendant to the plaintiff in the divorce action was in contravention of the statute, but declined to pass upon the question, holding that the adjudication in the second divorce action was conclusive on the status of the parties, and that, at the time of contracting the last marriage, no marriage subsisted between him and his first wife. But, while it is true that a judgment in rem of a competent court which has acquired jurisdiction of the res binds the whole world, it is necessary to see in what sense such a judgment is conclusive. It is doubtless conclusive so far as its sentence or mandatory portion is involved; that is to say, if an admiralty court decrees the forfeiture and sale of a prize, neither the forfeiture and sale nor the title acquired thereunder can be attacked collaterally. Probably the same is true of decrees in matrimonial actions, except that the courts of one country might not give effect to such a decree of the courts of another country where the decree proceeded on principles antagonistic to its own marriage laws, and also it might not be conclusive in a criminal prosecution. Duchess of Kingston's Case, 2 Smith, Lead. Cas. 734. The res, however, in a matrimonial action, is the relation of the parties. If a divorce be granted, the res is the status of the parties,—that from that time they no longer bear the relation of husband and wife. But such a judgment is not conclusive against the whole world of the facts which the decree recites, or on which it necessarily proceeds, except as to the particular subject-matter then before the court. If, in an action for the recovery of one piece of land, the issue litigated was the intestacy of the common ancestor of the parties, the determination of that fact by the judgment in the action would conclude the parties or their privies whenever the question might arise between them, though the litigations should

relate to other lands. This is not true of a judgment in rem, so far, at least, as its effect in litigations between persons not parties to the record nor entitled to become such.

In The Mary, 9 Cranch, 126, the circuit court had condemned the cargo of a vessel as a prize. At the same time the vessel itself was condemned as the enemy's property. The question presented was the effect of the decree against the vessel in the proceedings to condemn the cargo. There the supreme court, through Chief Justice Marshall, held that the rule that "a sentence of a court of admiralty is said not only to bind the subject-matter on which it is pronounced, but to prove conclusively the facts which it asserts," was limited to parties who could assert title to the property proceeded against, or would be entitled to intervene in the proceedings; that in other litigations it was not conclusive against parties not entitled to intervene in the proceedings; and that the owner of the cargo, who had no interest in the vessel, was not concluded by the decree against the vessel. I cannot find that this authority has ever been questioned or limited, and its doctrine must be considered as the law of the federal courts.

But the rule in this state confines the conclusiveness of a decree in admiralty within even narrower limits than those declared in the case of The Mary. In Francis v. Insurance Co., 2 Wend. 64, it was said by the chancellor, in delivering the opinion of the court of errors:

"It has also been decided in the supreme court of the United States, and in some of our sister states, as well as in England, that the sentence is final and conclusive against all the world, not only to change the property, but as to the facts on which the condemnation was founded, and that neither can be examined either directly or collaterally by the courts of any other country. This court, however, has adopted a different rule, which must now be considered as the settled law of this state. It is that the sentence of a foreign court of admiralty condemning the property as a good and lawful prize, according to the law of nations, is conclusive to change the property, but is only prima facie evidence of the facts on which the condemnation purports to have been founded. And in a collateral action such evidence may be rebutted by showing that no such facts did, in reality, exist. Vandenheuvel v. Insurance Co., 2 Johns. Cas. 451; Insurance Co. v. De Wolf, 2 Cow. 56."

This case is cited with approval in Durant v. Abendroth, 97 N. Y. 132, and it was there said by Judge Rapallo:

"In some of the states of the Union, and especially in the state of New York, though there are decisions to the contrary in the courts of England and in the United States courts, it has long been settled that foreign judgments in rem are conclusive only as to the property involved, and may be controverted as to all the grounds and incidental facts on which they profess to be founded. * * * There seems to be no reason why a judgment in rem, even of a domestic court, where jurisdiction over the person of a party has not been obtained, should be any more binding upon such party personally, as an estoppel in another suit, than would be a judgment of a foreign tribunal or a court of a neighboring state; and, in fact, this principle has been recognized in our own court, by holding that a judgment recovered against an absentee is binding only as to the property attached, and not upon the defendant personally."

If this rule be true as to a party to the record of whose person jurisdiction has not been obtained, it would seem to apply with much greater force to the case of one not a party to the record, and who could not intervene in the action or have been heard therein.

Further, I do not see that the decree of the New Jersey court necessarily asserts, either directly or by inference, the legitimacy of the children of the parties. It necessarily asserted that the petitioner therein was the wife of the defendant, but what the particular time was when that relation began was not adjudicated by the decree, nor was it necessarily involved in the litigation. The first wife of the intestate died in December, 1883. The petition in the divorce proceeding in New Jersey was filed in 1888. It is entirely possible that the parties might have contracted a lawful marriage subsequent to the death of the first wife, and prior to the institution of the action for divorce. The date alleged in the petition as the time of the marriage of the parties was immaterial. It may be that if the parties to the present action were privies to the parties in the divorce proceeding, and if it was shown that the question actually litigated in the divorce proceeding was the existence of lawful marriage at some particular period, the determination of that question in the divorce action would be conclusive in this. But the parties are not in privity, and giving to the judgment in the divorce action the conclusiveness awarded to it by some broad statements to be found in the English decisions, but denied to it by the American authorities, and especially by those of this state, all the decree necessarily imports is that at the time of its rendition the parties were husband and wife. But even this effect should not be given to it. Suppose the first wife was still living. If the decree of divorce necessarily established, as against strangers, that the petitioner in that proceeding was the wife of the defendant, Townsend, I do not see why it may not be claimed that it established with equal force that Sarah Ann Stickolorum was not his wife, because Christian countries do not recognize polygamous marriages. It is true that, in the conflict of divorce laws between the different states, a man may have one wife in one state, and another wife in another; that is to say, one state will recognize one woman as being his wife, and in another state another woman may be recognized as bearing that relation to him. But, while different states will recognize different women as being the wife of a man, I have never heard it suggested that the same state will recognize two different women each as the lawful wife. Nor would the case fall within the statutory exception of voidable marriages, for five years had not elapsed even between the two marriages. If the first wife should bring an action for dower, would any one seriously contend that the decree in the divorce proceeding was a bar to such an action?

We are of opinion that the special term erred in holding the decree of the chancellor of New Jersey conclusive, and that the judgment should be reversed, and a new trial granted; costs to abide the final award of costs. All concur.