(33 Misc. Rep. 287.)

TOWNSEND v. VAN BUSKIRK et al.

(Supreme Court, Special Term, Kings County. December, 1900.)

1. PRESUMPTIONS.
    In the absence of proof to the contrary, it will be presumed that the requisites of a valid marriage are the same in England as in New York.

2. MARRIAGE,—LEGITIMATIZED ISSUE.
    Cohabitation as husband and wife, together with public acknowledgment of the relation, covering a period subsequent to the death of a former wife, followed by an agreement between the parties to take each other for husband and wife, constitutes a valid marriage, which legitimatizes their offspring, as provided by Laws 1895, c. 531, providing that all illegitimate children whose parents have intermarried shall thereby become legitimatized, and shall be considered legitimate for all purposes.

Action by Francis H. Townsend against Mary E. Van Buskirk, Julia Mary Snell, and others to partition real estate of Thomas W. Townsend, deceased. The defendant Julia Mary Snell denied plaintiff's right to participate as heir at law in decedent's real estate. Judgment for plaintiff.

Foley & Powell (James C. Foley, of counsel), for plaintiff.
Rabe & Keller, for defendant Snell.

MADDOX, J. While it is my opinion that the defendant Snell, as an heir at law of, and claiming through, her father, is in privity in estate with her said ancestor (21 Am. & Eng. Enc. Law, 139; 1 Greenl. Ev. § 189; Black, Judgm. § 534; Herm. Estop. § 139), and is therefore concluded by the decree of divorce against her said father in the New Jersey action (Lythgoe v. Lythgoe, 75 Hun, 147, 26 N. Y. Supp. 1063, affirmed in 145 N. Y. 641, 41 N. E. 89; Moore v. Hegeman, 92 N. Y. 521), still the law of this case on that question, as settled on a previous appeal (22 App. Div. 443, 48 N. Y. Supp. 261), must obtain here, regardless of my views, and it remains to consider the other questions presented.

The proofs show a marriage, valid under our law, between Townsend and Sarah A. Stickalorum on September 21, 1863, in London, England; that they lived together until 1867; that she died on December 10, 1883; and that the defendant Snell is the sole surviving issue of that marriage. There is no evidence, nor is there a sug-

gestion, of any divorce of their marital relation; simply that he left her in 1867, and that they never again lived together,—never saw each other. Plaintiff's contention that there is a failure of proof to show a valid marriage, because of want of evidence of compliance with the law of England, is without merit, since, in the absence of proof to the contrary, it is to be presumed "that the requisites to constitute marriage are the same" there as in this state. *Hynes v. McDermott*, 91 N. Y. 458. The defendant Snell made out a prima facie case on that question, and there plaintiff left it. If it was not according to the marriage law of England at that time, he could have established the fact by putting that law in evidence, but this he did not do. After leaving his wife, Townsend came to this country with Susanna Croot, plaintiff's mother, and settled in Paterson, N. J. They lived together there as husband and wife from 1867 until about 1888, when an action for divorce, on the ground of his infidelity, was instituted by her in the New Jersey court of chancery, which resulted in the decree before referred to. In her petition in that case she alleged a marriage between them in London, England, in 1867, but this was denied by him in his answer, wherein he also alleged his prior marriage, and that petitioner knew of it; that his wife, Sarah Ann Stickalorum, had died about two years theretofore, but that he did not know of her death until about July 1st of that year. They reared a family, and lived lives of apparent respectability and of virtue, until his attentions to other women, in 1885, caused suspicion on her part, and an exhibition of a wife's indignation. We have his written expressions to her, and to their children, and his reference to her as his wife in conversations with tradespeople, with his tenant, and with others. He held her out as his wife, and their children as his. They assisted him in his business in Paterson, often from early morning, and also in his store in New York City. Over the front of his store in Paterson he put a large sign bearing the name "T. W. Townsend & Son," and he had but one son, the plaintiff here. He attended with her and their family, as one of the mourners, at the funeral of her stepfather, who had for some time lived with them as a member of their family. We have evidence of their manner of living, their conduct, and her good repute among the neighbors, all covering the period subsequent to the death, in 1883, of Townsend's first wife. And it all leads my mind to but one conclusion, the matrimonial character of the relations of Townsend and Susanna Croot prior to the commencement of the divorce action. If anything more be necessary to establish their marital relation, and I think not, we still have, however, his declaration, made to her in the latter part of 1885 or the early part of 1886, when remonstrated with for his attentions to other women, that "we will try and live different. * * * We will try and live happy together again, and do all that lay in both our power for the sake of our children. I will be a true and faithful husband to you until death;" and her reply to him that she would "be a wife to him and a mother to their children." If married prior to the death of his first wife in 1883, that marriage was absolutely void, and their relations were illicit and forbidden because of his dis-

68 N.Y.S.—33

ability. The only intimation in this case that Susanna Croot then knew of the first marriage, or that his first wife was living, is the averment of that fact in his answer in the divorce action, and, in view of the decree therein. in her favor, that statement is not, in my judgment, worthy of any consideration. Citation of authority for this proposition is unnecessary, for it is well settled that a pleading, or a statement therein, is not admissible in evidence in behalf of the pleader and against an adverse party. It would not be admissible as evidence against the plaintiff in the divorce suit, and cannot be considered as evidence against the plaintiff and his sisters here, nor is the averment in the plaintiff's petition in the divorce action of a marriage in London in 1867 admissible as evidence against the defendant Snell. There is no proof that Susanna Croot ever had, until the answer was interposed in the divorce action, any notice or knowledge of a prior marriage, or that Townsend had another wife. She was a witness on the trial, was cross-examined, but not interrogated on that subject, though an opportunity so to do was then afforded the defendant Snell.

There is, to my mind, a well-defined distinction between illicit relations, forbidden because of an undisclosed disability on the part of one of the parties thereto, and such relations as are mutually meretricious, involving on the part of the woman knowledge that its character is not, and is not intended to be, matrimonial, but of a wanton and lustful nature. It is possible that Susanna Croot was deceived, was imposed upon by Townsend, and we must not lose sight of the fact that she is entitled to the full benefit of the presumption of innocence of any wrongdoing, moral or otherwise, until the contrary is shown by a fair preponderance of evidence. That presumption may be rebutted by proof of acts, conduct, declarations, and manner of living inconsistent with such innocence; but that is wanting here. "If parties enter upon a cohabitation known by them to be meretricious, the presumption of innocence  *  *  * fails" (1 Bish. Mar. & Div. § 961); but, as before stated, there is no evidence here to justify a finding that Susanna Croot entered "upon a cohabitation known by" her "to be meretricious," and there can be no other conclusion from all the evidence in the case than that she and Townsend desired marriage, that that was their intention, and consequently "their cohabitation, thus matrimonially meant," made "them husband and wife from the moment when the disability" on his part was removed, and it was immaterial whether he knew of that removal (Fenton v. Reed, 4 Johns. 52; Rose v. Clark, 8 Paige, 579; 1 Bish. Mar. & Div. § 970); the fact being that it was removed, and their consent to the matrimonial relation may be inferred from their acts and conduct (Hynes v. McDermott, supra). A cohabitation knowingly meretricious in its inception is presumed to so continue until its character is changed by the act or the conduct of the parties clearly indicating that purpose, and an intention that their relation has become, and thenceforth shall be, that of husband and wife. That may be shown by proof of circumstances and of the acts of the parties, and, as said by Judge Vann in Gall v. Gall, 114 N. Y. 118, 21 N. E. 109: "It is sufficient if the acts and declara-

tions of the parties, their reputation as married people, and the circumstances surrounding them in their daily lives naturally lead to the conclusion that, although they began to live together as man and mistress, they finally agreed to live together as husband and wife." Assuming, for the sake of argument, the occasion for a change in the character of the relations theretofore existing between Townsend and Susanna Croot, no better or more conclusive evidence indicating their purpose thenceforth to make their relations matrimonial can well be conceived than their declarations, made each to the other after the removal of the disability he was theretofore under, and after the death of his first wife, on his part that he "will be a true and faithful husband to" her "until death," and on her part that she "will be a wife to him and a mother to their children," thus speaking in præsenti; and a "present agreement between competent parties to take each other for husband and wife constitutes a valid marriage, even if not in the presence of witnesses." Gall v. Gall, supra. Though no ceremonial marriage has been established, we find here all the requisites to constitute a valid marriage between them; for the proof shows "actual cohabitation as husband and wife, acknowledgments, declarations, conduct, repute, and reception among neighbors." Gall v. Gall, supra; Betsinger v. Chapman, 88 N. Y. 499. Thus, we see that Townsend and plaintiff's mother so lived together, in the apparent relation of husband and wife, until the divorce action, the decree in which adjudged "that the petitioner, Susanna H. Townsend, and the defendant, Thomas W. Townsend, be divorced from the bond of matrimony for the cause aforesaid (defendant's adultery), and the marriage between the said petitioner and the said defendant is hereby dissolved accordingly, and each of them are and is freed from the obligations thereof"; and it has been heretofore held in this case that the New Jersey court "had complete jurisdiction over the parties to the divorce action, and that the decree was valid." 22 App. Div. 443, 48 N. Y. Supp. 261. Consequently we here find an adjudication by a court of competent jurisdiction upon the relations of the parties, their status as man and wife, and that was an issue in the action. Judge Follett, in Finn v. Finn, 62 How. Prac. 89, said: "The relation of husband and wife lies at the very foundation of a decree a vinculo, and it must be affirmatively established before a judgment of divorce can be rendered. A divorce is only granted for cause occurring while the relation of husband and wife exists, and it presupposes and affirms the pre-existence of a valid marriage." And, indeed, in this case, Judge Cullen has said (22 App. Div. 443, 48 N. Y. Supp. 261) "that the determination that the parties sustained the relation of husband and wife was necessarily involved in the decree of the court dissolving the relation. It was an essential element of the petitioner's cause of action that she was at the time the wife of the defendant." Thus my conclusion is that Townsend and plaintiff's mother, for a long time prior and up to the decree of divorce, bore to each other the relation of husband and wife, and were so in fact when that relation was so dissolved by the New Jersey divorce decree.

The matrimonial relation of the parties having been established, there can be no question now as to the legitimacy of their offspring, the plaintiff and his sisters; for by chapter 531 of the Laws of 1895, passed May 3, 1895, it was enacted that "all illegitimate children whose parents have heretofore intermarried * * * shall thereby become legitimatized and shall be considered legitimate for all purposes. Such children shall enjoy all the rights and privileges of legitimate children,"—and that was the law of this state at the time of Townsend's death, April 24, 1896. Plaintiff, his sisters, and the defendant Snell claim as heirs of Townsend, and their heirship and rights to inherit real property situate here are governed and controlled by the law of our state at the time of his death. The language of the act is clear and unmistakable. It is that "such children shall enjoy all the rights and privileges of legitimate children." Plaintiff is entitled to judgment as prayed for in his complaint. Judgment for plaintiff.