Helen D'Auria, Plaintiff, *v.* Ferdinand D'Auria, Defendant.

Supreme Court, Special Term, Kings County, March 27, 1951.

*Perelstein & Perelstein* for defendant.

*Kaufman, Ascione & Kaufman* for plaintiff.

BARTELS, J. This is an application by the defendant husband to set aside a judgment of divorce which became final on June 20, 1942, upon the ground that (1) plaintiff and defendant were never married, and (2) the judgment was obtained upon fraudulent papers and affidavits on file in this action.

According to the papers on file plaintiff made a motion on July 19, 1949, to enter a money judgment against the defendant for the amount of $2,936, representing alimony for the plaintiff and her daughter, due and unpaid for 367 weeks at the rate of $8 per week. At that time defendant opposed the motion on the ground, among others, that there never was a marriage and that the judgment of divorce was a nullity. The matter was then referred to an Official Referee to hear and determine. Following several adjournments of the hearing for various reasons, the present application was made and the hearing before the Official Referee was further adjourned until its determination.

An examination of the affidavits on both applications discloses that the parties lived together for a year prior to the birth of their daughter on July 30, 1937. The defendant admits that on April 15, 1937, a license to marry was obtained but he alleges that it was never used because he destroyed it. The daughter was baptized in the Church of St. John the Evangelist in Brooklyn on November 6, 1937. Thereafter the defendant continued to live with the plaintiff until, according to him, he discovered the plaintiff in his automobile with another man on a deserted road in Brooklyn. After the discovery he states he continued to pay the rent for the apartment in which the plaintiff resided, and adds in his affidavit of August 8, 1949:

" I stayed away for about a year when the plaintiff came to me and stated she wanted a divorce but that I must be the guilty party. After some hesitation I was induced to go to *her* lawyer where we arranged for this divorce and I paid the lawyers fees and in addition thereto gave her Five Hundred ($500.00) Dollars. I could not get the divorce until I put up this sum in escrow with a mutual friend and it was paid to the plaintiff when the final decree was entered. This was in the early part of the year 1942.

" She continued living in the apartment and I continued to pay the rent therefor until December 1942, at which time I was inducted into the United States Army on December 15th, 1942. I was immediately shipped to Texas for training."

Defendant states that he subsequently remained in the army until 1946, when he was discharged, and that following his discharge he went to Arabia on business and did not return to this country until April, 1948. During his absence and up to the latter part of 1948, defendant claims that plaintiff lived with other men and told him she wished to be left alone. During such period and up to July, 1949, he maintained that no effort was made to enforce the judgment for alimony. In opposition, plaintiff claims that she has been unable to reach the defendant because he has been outside of the jurisdiction of the court. Attached to plaintiff's affidavit is a photostatic copy of a marriage certificate purporting to be signed by the rector of the same church where the child was baptized, to the effect that the parties were married on November 13, 1937, and indicating that the witnesses to the marriage were the same as those who witnessed the baptism.

Defendant lays stress upon the fact that the marriage license was destroyed and impliedly contends that this destruction in some way affects the validity of the marriage. If the mar-

riage is otherwise valid, this contention is without merit. Section 25 of the Domestic Relations Law provides in part: "Nothing in this article contained shall be construed to render void by reason of a failure to procure a marriage license any marriage solemnized between persons of full age". (*Heller* v. *Heller,* 188 Misc. 608; *Springer* v. *Springer,* 189 Misc. 820.)

In 1942 plaintiff commenced an action in this court against the defendant for divorce. According to the affidavits attached to the papers, defendant was personally served with a copy of the summons and complaint. Defendant did not appear or answer. In his papers he does not deny that he was served with a copy of the summons and complaint. In the first finding of fact of the Official Referee, upon which the interlocutory and final judgment was based, it is expressly determined "That the plaintiff was married to the defendant in the Borough of Brooklyn, City and State of New York." The final judgment of divorce was entered on June 20, 1942, custody of the daughter and alimony of $8 per week for support and maintenance of the plaintiff and daughter were awarded plaintiff. There is nothing in the records to indicate that the defendant was served with a copy of the interlocutory or final judgment of divorce with notice of entry. From the defendant's own affidavit, however, it is obvious that he had notice of the final decree because he says that the $500 which he placed in escrow "was paid to the plaintiff when the final decree was entered. This was in the early part of the year 1942."

The question is thus posed whether the defendant may set aside this judgment upon the grounds set forth in his application. The first ground requires a consideration of the effect of the judgment of divorce upon the parties. A judgment of divorce necessarily adjudicates that the plaintiff was married to the defendant. The existence of a valid marriage lies at the very foundation of a divorce action. (*Townsend* v. *Van Buskirk,* 22 App. Div. 441; *Durham* v. *Durham,* 99 App. Div. 450.) It is not enough, therefore, for defendant to allege that he was never married to the plaintiff. He must be able to set aside the judgment because of some default or because it was obtained by reason of an error in fact not arising upon the trial or because of some fraud practiced upon him. Until this judgment is so removed by a direct attack, it is conclusive upon him with respect to every material issue that was litigated or might have been litigated between the parties. (*Townsend* v. *Van Buskirk, supra; Durham* v. *Durham, supra; Pray* v. *Hegeman,* 98 N. Y. 351.)

In a direct attack defendant is thus at liberty to assail the judgment on any ground that may be available to him. Defendant attaches importance to the fact that he did not answer or appear and that he was not served with a copy of the judgment with notice of entry. Section 108 of the Civil Practice Act provides that the court in its discretion may grant relief against default judgments or orders " at any time within one year after notice thereof ". Such notice has been held to mean the usual notice of judgment with written notice of entry. (*Redfield* v. *Critchley,* 277 N. Y. 336.) If this were a default judgment, plaintiff's attack on the ground of lack of notice might be valid. A judgment for divorce, however, is not a default judgment even though one of the parties fails to answer or appear. Section 1150 of the Civil Practice Act requires proof of the material allegations of the complaint and rule 283 of the Rules of Civil Practice specifically states that no adverse judgment " shall be made of course by the default of the defendant, or in consequence of any neglect to appear at the hearing of the cause, or by consent." Rule 282 of the Rules of Civil Practice expressly requires proof in open court or at an open hearing even though one of the parties fails to answer. Consequently, the judgment of divorce herein entered was not by default and must be considered a judgment after trial. (*Gysin* v. *Gysin,* 263 N. Y. 509; *Redfield* v. *Critchley, supra.*)

Section 522 of the Civil Practice Act provides that a motion may be made to set aside a final judgment " for error in fact not arising upon the trial," and section 528 of the Civil Practice Act provides that such a motion shall not be heard " after the expiration of two years since the filing of the judgment-roll, unless notice thereof is given for a day within the two years;". Since more than two years have elapsed after the filing of the judgment-roll, it is obvious that the defendant cannot proceed under this section. In addition, it has been held that errors in fact cannot be stretched under this section to include a failure to present a defense based upon facts known to the party at the time of the trial. (*Boslov* v. *Boslov,* 177 Misc. 817; *Merritt* v. *Merritt,* 259 App. Div. 242, appeal dismissed 285 N. Y. 561.) Likewise, cases of fraud are not within the provisions of the section. (*Furman* v. *Furman,* 153 N. Y. 309.)

Consequently, only one possible attack against this judgment remains. Such an attack must be limited to fraud. Even fraud is not sufficient in such an attack if the fraud involved the same matter which was actually tried or so in issue that it might have been tried. (*Greene* v. *Greene,* 68 Mass. 361.) In

*United States* v. *Throckmorton* (98 U. S. 61, 68) the principle is enunciated as follows: " We think these decisions establish the doctrine on which we decide the present case; namely, that the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered.''

All the evidence presented by the defendant indicates that if any fraud were perpetrated in this case it was perpetrated not upon the defendant but upon the court. It is not a fraud that was extrinsic or collateral to the matter tried by the court. According to defendant's own statement he was a party to the perpetration of this fraud when he admitted that he placed $500 in escrow in order to obtain the final judgment of divorce. He is in his present predicament by reason of his own participation in the fraud and collusion of which he now complains. He has bartered with his marital rights and for the last nine years has been willing to treat the judgment he so obtained as a valid one. He now asks this court to relieve him from the effects of his barter upon the ground that he deliberately failed to disclose to the court at the time of the divorce the fact that he was not married. This is not the type of fraud against which relief is granted.

Finally, this defendant is in no position to invoke the aid of this court even were he able to establish that he otherwise came within the legal concepts permitting such aid. This case is similar to *Whittley* v. *Whittley* (60 Misc. 201) where a defendant wife attempted to set aside a decree of divorce upon the ground of fraud and collusion to which she was admittedly a party. In dismissing the complaint Judge Seabury said on page 202: '' She was willing to be a party to the perpetration of the fraud upon the court; but, because the defendant has not paid her the money which he promised her, she proclaims the fraud and asks a court of equity to set aside a judgment entered against her. The plaintiff is not in a position to invoke the aid of the court to relieve her from a situation in which, according to her testimony, she has been placed by her own participation in the fraud of which she now complains.''

In *Lanktree* v. *Lanktree* (42 Cal. App. 648), the California Court reached a similar conclusion with respect to a collusive decree, stating (p. 651): '' Where a collusive decree has become final, courts of equity will not ordinarily interfere at the instance

of either party. To warrant such action there must be a showing of coercion, imposition, or fraud upon the party complaining.''

In refusing to grant the relief requested, the court is not unmindful of the harmful effect that such relief, if granted, might eventually have upon the daughter, an innocent third party. The rights of such innocent parties should not be disturbed upon such a flimsy and inequitable showing.

Motion to set aside judgment denied.

Motion by plaintiff for additional counsel fees denied.