Matter of Feaster (2024 NY Slip Op 51608(U))

[*1]

Matter of Feaster

2024 NY Slip Op 51608(U)

Decided on November 8, 2024

Surrogate's Court, Erie County

Mosey, S.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 8, 2024
Surrogate's Court, Erie County

In the Matter of the Estate of Rufus Junior Feaster, Deceased.

File No. 2022-1009/B

JEFFREY F. VOELKL, ESQ.
Appearing for Rufus M. Feaster, Petitioner
DENISE MARTIN
Appearing pro se

Acea M. Mosey, S.

Rufus Junior Feaster [hereafter, decedent] died intestate on January 18, 2022, at the age of 55. On March 15, 2022, decedent's non-marital son, Rufus M. Feaster [hereafter Rufus], filed a petition for Letters of Administration in decedent's estate. Then, on March 21, 2022, Denise Martin [hereafter, Denise], filed a petition seeking Letters of Administration, alleging that she had priority over Rufus by reason of her April, 2020, marriage to decedent in South Carolina. Upon his filing proof of paternity under EPTL 4-1.2, and because there was an issue with respect to Denise's claim to be decedent's surviving spouse, Limited Letters of Administration were issued to Rufus on April 25, 2023, to commence and pursue personal injury and wrongful death litigation pertaining to decedent.
On October 10, 2023, Rufus filed a petition for advice and direction, once again alleging that Denise was lawfully married to Christopher McCallar [hereafter, Christopher] when she subsequently married decedent in South Carolina. This Court was asked to determine (1) the marital status of Denise in relation to decedent, and (2) Denise's petition seeking to become fiduciary of this estate. All parties, including possible unknown heirs, the Erie County Public Administrator, and the Attorney General of the State of New York, were duly cited, and Linda C. Novotny, Esq., was appointed guardian ad litem [hereafter, the GAL] for possible unknown heirs.
Following the return date, I set this matter down for an evidentiary hearing on the limited [*2]issue of the marital status of Denise, decedent's alleged spouse.[FN1]
On consent of the parties, that hearing was held before a Court Attorney-Referee on June 11, 2024, on a hear and report basis. The parties consented to this proceeding, waived a written referee report, and consented that this Court could decide the issues based upon the hearing transcript and documentary evidence (see SCPA 506[6][c]).
I have considered all the testimony and documentary proof, as well as submissions before me, and I now find and decide as follows.
(A)
Rufus alleges that, when Denise "married" decedent in April, 2020, she was lawfully married to Christopher by virtue of her July 5, 2019 marriage to Christopher in Buffalo, New York, 
and that "she was never legally divorced [from Christopher]".
A presumption exists, absent contrary evidence, that a second marriage is valid (Matter of King, 38 Misc 3d 1204[A], 2012 NY Slip Op 52368[U] [2012], quoting Matter of Wachter, NYLJ, March 16, 1994, at 23, col 4; see also Matter of McDonald, 276 AD2d 631, 632 [2000] and Matter of Gomez v. Windows on the World, 23 AD3d 967, 969 [2005]).
The person alleging that a second marriage is not valid has the burden of rebutting the presumption that it is valid and must do so with "strong and satisfactory" proof (Matter of Esmond v Lyons Bar & Grill, 26 AD2d 884, 884 [1966]). The burden is even higher where, as here, the party challenging the validity of the marriage is a stranger to the marital relationship (see Matter of Cheek, 35 Misc 3d 1218[A], 2012 NY Slip Op 50736[U] [2012]).
"The general rule is that the legality of a marriage 'is to be determined by the law of the place where it is celebrated'" (Matter of Farraj, 72 AD3d 1082, 1083 [2010], quoting Matter of May, 305 NY 486, 490 [1953]; see also Mihigo v Mihigo, 225 AD3d 1139, 1139 [2024]).
Under South Carolina law, all marriages contracted while a party has a living husband or wife are void (South Carolina Code Section 20-1-80). "A mere marriage ceremony between a man and a woman, where one of them has a living wife or husband, is not a marriage at all. Such a marriage is absolutely void, and not merely voidable" (Hill v BERT Retirement Plan, 405 SC 423, 424-25 [2013], quoting Day v Day, 216 SC 334, 338 [1950]). South Carolina will not recognize a bigamous second marriage even where a spouse was acting under a good faith belief because to do so would violate public policy (id; see Lukich v Lukich, 368 SC 47, 56 [2006]).
Proving the existence of a previous valid marriage to a living husband or wife without a subsequent divorce would thereby render a second, South Carolina, marriage void (see Hill v BERT Retirement Plan, supra, at 424-425).

 (B)
Six witnesses testified at the evidentiary hearing: (1) Tianna Marks [hereafter, Clerk Marks], the City of Buffalo Clerk [FN2]
; (2) Patrick Roberts [hereafter, Patrick], a private investigator; [*3](3) Denise,[FN3]
decedent's alleged spouse; (4) Johnny White [hereafter, Johnny], Denise's son; (5) Ronisha Yussif [hereafter, Ronisha], Denise's tax-preparer; and (6) Felicia Dawkins [hereafter, Felicia], Denise's cousin.
At the hearing, Rufus submitted eight documents in evidence: Clerk Marks' Response to Judicial Subpoena, an affidavit from Patrick, an affidavit from Denise, and five Facebook posts from Denise. These documents included an incomplete, partially signed, copy of a State of New York Department of Health Affidavit, License and Certificate of Marriage, dated June 24, 2019 [hereafter, "the New York Marriage License"].
Clerk Marks testified that Denise and Christopher obtained their New York Marriage License on June 24, 2019, at the Clerk's Office in Buffalo City Hall. Denise, Christopher, and Clerk Marks (in her capacity as Deputy Clerk for the City of Buffalo) signed the New York Marriage License that day.
On July 5th, 2019, Denise married Christopher at the City of Buffalo Clerk's Office, with the marriage solemnized by Clerk Marks in her capacity as Deputy Clerk. The marriage ceremony was witnessed by at least two persons. Clerk Marks testified that she signed the New York Marriage License at line 29 and "the two witnesses would have signed on line 30 and 31."
Patrick testified without objection that he had located and spoken to Christopher about his marriage to Denise. Christopher told Patrick that he and Denise had been married and that the wedding was witnessed by an "officiant" and some other individuals.
At the hearing, Denise acknowledged that she and Christopher had been married:
"Q. So you do not dispute that you married Christopher McCallar?
A. I do not dispute it."
Denise testified that her marriage to Christopher was solemnized by Clerk Marks on July 5th, 2019. She also testified that the New York Marriage License had been signed after the ceremony by herself, Christopher, Clerk Marks, and the two witnesses (a friend of Christopher's and her daughter Taiwaina).
Several Facebook posts identified by Denise as having been made by her were admitted into evidence without objection. These posts reference her marriage to Christopher and refer to Christopher as her "husband."
No proof was offered of the dissolution of Denise's marriage to Christopher. Denise testified that neither she nor Christopher ever filed for divorce and no documentary evidence has been offered to support Denise's claim that her marriage to Christopher's was dissolved or otherwise terminated. However, Denise testified that she did not believe her marriage to Christopher was a legal marriage because she was told "no paperwork had been sent off to Albany" and no paperwork was filed in Erie County. Denise's understanding was based on a conversation she had with an employee at City Hall several days after the marriage. 
Denise explained it this way:
"Okay. The questions that Mr.Voelkl asked, give a reason why I stated we were never [*4]married is because the marriage only lasted for like a couple of days. We both, myself and Christopher went back stating that we didn't want the marriage; we couldn't come to an agreement and he didn't want to be married, didn't wanna do counseling, so we went right back three, four days after the marriage, said we doesn't want  we don't want this. We sat before Tianna Marks and Tianna Marks stated that the marriage was null and void because no paperwork had been sent off to Albany and so that makes it not a legal marriage, to my understanding. That's not a legal marriage. There's nothing in City Hall, nothing is in Albany stating that I am married" (emphasis added).
According to Patrick, Christopher had told him that, roughly two-weeks after his wedding to Denise, he and Denise "spoke with an individual who was employed at City Hall and that paperwork relating to the marriage was shredded or ripped up in their presence".
Clerk Marks testified that there was nothing filed in Erie County or Albany other than the New York Marriage License she provided with her affidavit. This document was a City of Buffalo Clerk's office computer copy of what had been issued on June 24, 2019 but was not the fully filled-out original which had been completed after the marriage ceremony at City Hall on July 5, 2019. That original had been taken by Denise and Christopher after the ceremony.

 (C)
"The parties' marital relationship, including obligations and liabilities, is not dependent solely on the parties' understandings, preferences or desires" (T.I. v R.I., 83 Misc 3d 800, 822-823 [2024]). Once parties marry, there is a special relationship between them which is regulated by law and which holds the parties to obligations and liabilities that they cannot unilaterally alter (id., citing Maynard v Hill, 125 US 190, 211 [1888]).
Here, I find that the marriage on July 5, 2019 between Denise and Christopher was valid. See, e.g., Domestic Relations Law [DRL] §§11 and 11-c. Not only does the validity of a marriage not depend upon the filing and recording of a fully executed marriage license, but a marriage otherwise properly solemnized is not rendered invalid or void if a marriage license has not been obtained (DRL §25; see also Matter of Farraj, supra, at 1083 [2010], Persad v. Balram, 187 Misc 2d 711, 714 [2201] and D'Auria v. D'Auria, 200 Misc 939, 941-942 [1951]).
Here, all the evidentiary material and the credible testimony establishes that Denise was married to Christopher on July 5, 2019 and that no divorce ever took place between them thereafter. No matter what Denise and Christopher may have believed their status was when they returned to Buffalo City Hall several days after their marriage and told some employee there that they no longer wished to be married, that wish did not effect a termination of their marital relationship. From the record before me, Denise and Christopher remain married to one another to this day.[FN4]

I conclude, therefore, that Denise's marriage to decedent in South Carolina on April 7, 2020 was void from inception and that Denise was not validly married to decedent at the time of his death. I further find that Denise is not decedent's surviving spouse and is not a distributee of his (see EPTL 5-1.2).
Accordingly, letters of administration may not be granted to Denise, and her petition seeking such relief is hereby dismissed.
This decision shall constitute the Order and Decree of this Court and no other or further order or decree shall be required.
DATED: November 8, 2024
BUFFALO, NEW YORK
HON. ACEA M. MOSEY
Surrogate Judge

Footnotes

Footnote 1: The GAL was excused from the marital status hearing.

Footnote 2: Marks became "city clerk July 9th of 2019", but before then she had been "[d]eputy city clerk for the City of Buffalo" since 2015.

Footnote 3: I note that Denise, as decedent's alleged spouse, is an interested witness. As such, her testimony was given appropriate weight under the circumstances.

Footnote 4: In light of my determination in this regard, I direct that counsel for Rufus shall ensure that a copy of this decision is sent to Christopher.