(18 App. Div. 320.)

## In re KIMBALL'S ESTATE.

### KIMBALL v. KIMBALL et al.

(Supreme Court, Appellate Division, Second Department.　June 22, 1897.)

DIVORCE—APPEARANCE—WEIGHT OF EVIDENCE.

After letters of administration had been granted to the mother of an intestate, one M. applied for their revocation on the ground that she was the widow of such intestate. It appeared that she had been married to him, but that prior to such marriage she had been married to another man,. from whom she claimed to have obtained a divorce in another state. Such divorce was granted while the defendant in the suit was a resident of New York. He was not served within the state where the divorce was granted, and the decree recited that he did not appear. It also appeared, however, that, shortly after the issuing of the letters of administration on the estate of M.'s alleged second husband, the first husband filed a petition in the divorce suit, alleging that he had attempted, in an informal manner, to appear and answer, and thereupon the decree was amended nunc pro tunc by reciting his appearance. *Held* that, whether or not the amendment of the decree of divorce nunc pro tunc could determine the status of M., so as to affect the property rights of third parties, the finding of the surrogate, upon these facts, that M.'s first husband never in fact appeared in the divorce proceedings, and that the same were invalid, would not be disturbed.

Appeal from surrogate's court, Kings county.

Application by Maude E. Kimball against Harriet A. Kimball and others for the revocation of letters of administration of the goods and credits of Edward C. Kimball, deceased. From a decree against her, applicant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

George Bell, for appellant.

L. H. Arnold, for respondents.

GOODRICH, P. J. The intestate died November 9, 1896. On the next day a petition was filed with the surrogate of Kings county by Harriet A. Kimball, his mother, alleging that the intestate was unmarried, and left, him surviving, no widow. Whereupon, on the same day, letters of administration were granted to her and John S. James, her son-in-law. The appellant, Maude E. Kimball, on December 17th filed a petition to revoke these letters of administration, asking for the issue of letters to herself, and alleging that she was the widow of the intestate, having been married to him in the city of Brooklyn on June 29, 1895, by Rev. W. C. P. Rhoades, pastor of the Marcy Avenue Baptist Church; that she and the intestate lived together as husband and wife at Sea Cliff until September 7th, when they went to housekeeping at 483 Decatur street, Brooklyn, and continued to live together until January 3, 1896, when the intestate went to Easton, Pa., to engage in business, and she returned to her mother's house, owing to the failure of the intestate to support her; that she was introduced by the intestate as his wife; and that visits were exchanged with them. The application was opposed by the mother and sister of the intestate on the ground that the petitioner was not the widow of the deceased.

They admitted that a ceremony of marriage had taken place between her and the intestate, but alleged that the marriage was invalid because she had married on May 12, 1885, one James L. Semon, at the city of New York, and that in September, 1890, she instituted an action for divorce in the district court of the Fifth judicial district of the state of North Dakota; that Semon was then, and ever since has been, a resident of this state; that an order was made directing the service of the summons by publication; that a copy of the same was served on Semon at the city of New York, and that he did not appear, answer, or demur in the action; that these facts were recited in the final decree of divorce of January 26, 1891; that by reason of these facts the court did not acquire jurisdiction of Semon, and that the decree of divorce was absolutely null and void in this state, so that the appellant could not lawfully contract marriage with the intestate; and that her alleged marriage with the intestate was null and void. If these allegations were assumed to be true, we would have no difficulty in deciding this controversy. It was said in Kamp v. Kamp, 59 N Y. 212, 215, that:

"The general rule is that a party cannot appeal from one judge to another, of co-ordinate jurisdiction, by motion for relief from an order or judgment against him, but must seek his remedy by appeal to a tribunal having appellate jurisdiction in the premises. But the question has usually arisen in cases where the court making the order has had jurisdiction of the subject-matter and of the person of the party against whom the order or judgment has passed. The reason of the rule, which is simply one of convenience, does not apply when the court is entirely without jurisdiction, and the whole proceeding, including the order or judgment, is coram non judice and void. One is not bound to appeal from a void order or judgment, but may resist it and assert its invalidity at all times."

In People v. Baker, 76 N. Y. 78, 82, the defendant was indicted for bigamy. It appeared that a decree of divorce had been obtained in an action in the court of common pleas in Ohio, where the record showed that the process had been served on the defendant by publication, and that there was no personal appearance by him in the action. This decree was regular and sufficient, and the judgment binding under the laws of Ohio. Judge Folger, writing the opinion, said:

"As we look at this case, it presents this question: Can a court in another state adjudge to be dissolved and at an end the matrimonial relation of a citizen of this state, domiciled and actually abiding here throughout the pendency of the judicial proceedings there, without a voluntary appearance by him therein, and with no actual notice to him thereof, and without personal service of process on him in that state?"

This question the court decided in the negative, and affirmed the conviction of the defendant for bigamy, so that the question is no longer an open one in this state.

The question, however, is complicated by subsequent proceedings, and an amendment nunc pro tunc of the decree of the North Dakota court. A few weeks after the issuing of the letters of administration, Mr. Semon filed a petition in that court, alleging that after service upon him of the process within the state of New York, which required the answer within 30 days, he did, on October 23, 1890, prepare and verify what he calls an answer to the complaint, and

served it by mail upon the plaintiff's attorneys in that action; that he did this without advice of counsel, and that it was his intention to inform the court of his position and defense, and to submit himself to the jurisdiction of the court; and that he believed this course was sufficient, and that his answer would be filed. Annexed to his petition was the paper referred to, and an affidavit from one of the plaintiff's attorneys admitting its receipt, and stating that the same had been lost or destroyed, and was never filed by them, because it was not in the form of a pleading according to the statutes of that state. The court directed the filing of the defendant's letter as of the date when it was received by the plaintiff's attorneys,—apparently, October 28, 1890,—and ordered that the decree "be amended nunc pro tunc as of the 26th day of January, 1891, by striking out therefrom the recitals setting forth 'that the defendant failed to answer, demur, or make any appearance whatever, as by the summons and the law required in such case, but instead thereof made default; that upon such default,' and by inserting in lieu thereof the following words: 'the defendant having appeared herein, and answered, and submitted himself to the jurisdiction of the court.'" The question presented for our consideration is whether the status of the petitioner is determined by the amendment of the decree nunc pro tunc, and whether the decree thus amended can be attacked on the ground that the court was without jurisdiction. The practice of North Dakota is generally similar to our own. Section 5737 of the Code of that state provides that it shall not be necessary to entitle an affidavit in an action, but an affidavit without a title, or with a defective title, shall be as effectual for every purpose as if it were duly entitled, if it intelligently refer to the action or proceeding in which it is made. Such, also, is the similar provision of section 728 of our own Code of Civil Procedure. To the letter of Semon's was attached an affidavit dated October 23, 1890, which, although quite informal as a verification of a pleading, declared that the letter was "absolutely true in every particular." The district court of North Dakota held that it constituted a proper appearance and answer, ordered it to be filed as such, and amended the decree nunc pro tunc, as already stated. The Code of that state contains sections substantially similar to sections 723 and 724 of our own Code, providing for the amendment, before or after judgment, of all papers and proceedings, in furtherance of justice. It is well-settled law in this state that the recital in a judgment that a defendant was served with process and appeared therein is not conclusive, and does not preclude such defendant from showing that in fact he was not served with process and did not appear, and that there is no distinction in these respects between the effect of domestic and foreign judgments. Ferguson v. Crawford, 70 N. Y. 253. A similar question to the one here involved was under consideration in Kerr v. Kerr, 41 N. Y. 272. The surrogate of Kings county in August, 1867, granted to the plaintiff, Jane Kerr, claiming to be the widow of Richard Kerr, letters of administration upon the estate of Richard. Subsequently the defendant, Jane F. Kerr, applied for a revocation of the letters on the ground that she,

and not Jane, was the widow. Jane answered that she had married Richard in February, 1867. It appeared that in July, 1866, and before his marriage with Jane, Richard had obtained a divorce from a former wife in an Indiana court, the decree reciting the appearance of the wife in the action. The surrogate decided—and the court of appeals affirmed his decision—that the judgment might be inquired into, and the fact shown that there was no such appearance, and that the Indiana court had not acquired jurisdiction. It will be observed that this attack was made upon the decree by a stranger, and not by a party to it, and was permitted because property rights were affected by it. The surrogate in this proceeding has found, as a matter of fact, that the appellant and Semon were married in New York on May 12, 1885; that ever since that marriage he was a resident of this state; and that the appellant commenced her action for divorce in North Dakota, but that her husband was not served with process in that action in said state, and did not appear therein. He finds, as a conclusion of law, that the North Dakota court did not acquire jurisdiction of the husband, and that when the appellant entered into the marriage ceremony with the intestate she was still the wife of Semon, and could not contract a lawful marriage with the intestate, and therefore is not his widow. It is not necessary for us to decide whether the rights of the intestate's next of kin can be affected by the amendment of the decree made after his death. It is sufficient for us to say that we can see no reason for disturbing the findings and conclusions of the surrogate, for the reasons already stated. He was justified by the evidence in his decision. It is at least a very curious and suggestive coincidence that, as soon as the validity of the appellant's divorce had been practically attacked by the granting of letters of administration to the next of kin, the former husband of the appellant at once applied for an amendment of the decree which adjudged him guilty of moral obliquity in failing to discharge his marital obligations, not for the purpose of having it vacated and being relieved from the imputation which it carried, but to give life and force to the charges against himself, and for this purpose submit himself to the jurisdiction of the court and assent to the judgment. The story of his appearance and answer is apocryphal, and challenges credulity, and the surrogate appears to have been of this opinion. We see no reason to differ with his conclusion.

The decree should be affirmed. All concur.