In the Matter of the Estate of ANNA HOLMES, Deceased. FRANCES M. LAWSON, Appellant; ERNEST H. DAVIS, Respondent.

Submitted May 21, 1943; decided November 24, 1943.

J. *Carl Fogle* for appellant. The respondent was not entitled to letters of administration. (2 Butler on N. Y. Surrogates Law & Prac., § 1192; *Matter of Goldman,* 156 Misc. 817.) The divorce obtained in Nevada and the subsequent marriage of the respondent and deceased in Nevada was not recognized as

valid in this State at the time respondent's wife obtained the New York divorce. (*Earle* v. *Earle,* 141 App. Div. 611; *Matter of Crook,* 140 Misc. 721; *Pignatelli* v. *Pignatelli,* 169 Misc. 534; *Matter of Ferry,* 155 Misc. 198; *Matter of Hart,* 160 Misc. 583.) Letters of administration will not be granted under facts similar to this case. (*Matter of Haffner,* 254 N. Y. 238; *Matter of Mahel,* 153 Misc. 228; *Matter of Hill* v. *Vrooman,* 242 N. Y. 549; *Matter of Ferry,* 155 Misc. 198; 2 Butler N. Y. Surrogates Law & Prac., § 1192; *Matter of Goldman,* 156 Misc. 817; *Matter of Huber,* 136 Misc. 634.) The judgment in the New York State divorce action determined that respondent was not the husband of decedent, and is conclusive and final as to respondent. (34 C. J., 921, 922, 923, 938.) This is not a collateral attack by the heirs at law of the deceased in view of the provisions of the Surrogate's Court Act as to the qualifications of an administrator, especially after the New York court had declared that the Nevada divorce in this case was not binding and that the respondent was not the husband of the deceased. The United States Supreme Court in deciding the *Williams* case (317 U. S. 287) clearly did not intend to disrupt or reverse rulings and decisions in the state courts which had already become final. The domicile of the respondent in the State of Nevada was not *bona fide.* (*Jiranek* v. *Jiranek,* 179 Misc. 502; *Oberlander* v. *Oberlander,* 179 Misc. 459; *Matter of Bingham,* 265 App. Div. 463.)

*Joseph Speranza* for respondent. The marriage between Ernest H. Davis and Anna Holmes Davis was legal. (*Haddock* v. *Haddock,* 201 U. S. 562; *Hubbard* v. *Hubbard,* 228 N. Y. 81; *Winston* v. *Winston,* 165 N. Y. 553; *Olmstead* v. *Olmstead,* 190 N. Y. 458, 216 U. S. 386; *Price* v. *Price,* 124 N. Y. 589; *Matter of Swales,* 60 App. Div. 599, 172 N. Y. 651; *Van Voorhis* v. *Brintnall,* 86 N. Y. 18; *Moore* v. *Hegeman,* 27 Hun, 68, 92 N. Y. 521; *Bank of Utica* v. *Mersereau,* 3 Barb. Ch. 528; *Perkins* v. *Guaranty Trust Co.,* 274 N. Y. 250.) The *Williams* case (317 U. S. 287) is in point with the case at hand.

LEHMAN, Ch. J. Anna Holmes married Ernest H. Davis in the township of Reno, State of Nevada, on September 18, 1937. After the marriage they moved to Lockport in Niagara County, New York, where they have continuously resided until the death

of the decedent, then known as Anna Holmes Davis, in January, 1942. At her death, Frances M. Lawson applied to the Surrogate's Court of Niagara County for letters of administration upon the decedent's estate, citing Ernest H. Davis as the alleged husband of the deceased. Ernest H. Davis filed an answer to her petition alleging in substance that he was the husband of the deceased and entitled to letters of administration; and on the same day he applied to the court for such letters.

The validity of the marriage between the decedent and Ernest H. Davis is challenged on the ground that at the time of the marriage he had a lawful wife residing in Lockport, New York. The controversy was submitted to the Surrogate upon an agreed statement of facts. It appears from this statement that:

" Ernest H. Davis, who claims to be the husband of the said deceased, had been previously married to one Helen M. Davis. That in the month of June, 1937, the said Ernest H. Davis went to Reno, Nevada, and there commenced an action for absolute divorce against the said Helen M. Davis. That in his complaint in Nevada, said Ernest H. Davis alleged that he and the said Helen M. Davis were married in New York State on October 18th, 1926, and that said Helen M. Davis resides at Lockport, New York. That said complaint alleged, as the only grounds for said divorce, ' That defendant has treated plaintiff with extreme cruelty, and that the acts of cruelty so committed by said defendant have caused plaintiff great mental anguish and physical pain, causing him to become sick and nervous, made his life miserable and unbearable, and further cohabitation with defendant impossible '. That said Helen M. Davis did not appear by attorney or in person and was not served personally with a summons, but was served by publication. On September 18th, 1937, the said Ernest H. Davis obtained a decree of absolute divorce against the said Helen M. Davis and on the same day the said Ernest H. Davis married Anna Holmes in the Township of Reno, State of Nevada. The said decree of divorce obtained against the said Helen M. Davis was obtained by the said Ernest H. Davis on the grounds alleged in his complaint, which was not adultery."

In December, 1937, after the marriage of the decedent and Ernest H. Davis and their removal to Lockport, New York, "Helen M. Davis commenced an action in the Supreme Court of this state against the said Ernest H. Davis for absolute divorce on the ground of adultery, alleging specifically that the said Ernest H. Davis was living in adulterous relationship with the said Anna Holmes Davis. The said Ernest H. Davis filed an answer to this summons and complaint alleging, in substance, that the said Helen M. Davis refused to go to the western part of the United States with the said Ernest H. Davis in June, 1937, and that the said Ernest H. Davis did obtain a Nevada divorce from the said Helen M. Davis on grounds other than adultery, and that he married Anna Holmes Davis and that he and the said Anna Holmes Davis, after their marriage, came to Lockport, New York, and held themselves out to the public as husband and wife."

The divorce action in this State was referred to a referee, who reported: "1. That the same was duly brought on for hearing at the Court House in the City of Lockport, New York, on the 8th day of June, 1939, at ten o'clock in the forenoon of that day, pursuant to notice thereof duly served upon the Defendant and his attorney; that upon said hearing he was attended by David E. Jeffery, Counsel for the Plaintiff, and by Joseph Speranza, Counsel for the Defendant, who stated in open court and for the record that no defense would be interposed by the Defendant; that he has heard the evidence and testimony and after due deliberation being thereupon had, makes and returns the following decision upon the questions of fact and law involved and finds the following:

" *Findings of Fact*

"1. That the Plaintiff and the Defendant herein were married at the Town of Stafford, Genesee County, New York, on the 18th day of October, 1926.

"2. That the Plaintiff and the Defendant have ever since their said marriage been and now are actual residents and inhabitants of the City of Lockport, Niagara County, New York.

"3. That on and subsequent to the 18th day of September, 1937, the Defendant herein has committed adultery by living in adulterous intercourse with a female known as Anna Holmes or

Anna Davis at 179 Park Avenue, in the said City of Lockport, New York, and,

" 4. That the said acts of adultery have been committed without the consent, connivance, privity or procurement of the Plaintiff.

" 5. That the Plaintiff has not voluntarily co-habited with the Defendant since the discovery of the said act of adultery.

" 6. That five (5) years have not elapsed since the discovery of said act of adultery by the Plaintiff.

" 7. That the Plaintiff has not forgiven nor condoned the said act of adultery.

" 8. That no decree of divorce has been granted against either Plaintiff or Defendant in any of the Courts of any State or Territory of the United States or of any foreign country and that no action for divorce has ever been brought by either of the parties against the other, except that the Defendant procured an alleged decree of divorce against the Plaintiff in an action brought by him, as Plaintiff, in 1937, in the District Court of the State of Nevada, in which action the Plaintiff did not appear in any manner.

" *Conclusions of Law*

" 1. That the Plaintiff is entitled to final judgment, unless the Court shall otherwise order in the meantime, three months after the filing of the decision herein and the entry of interlocutory judgment dissolving the marriage between the Plaintiff, Helen M. Davis, and the Defendant, Ernest H. Davis, which was solemnized on the 18th day of October, 1926, and divorcing the parties on the ground of Defendant's adultery and permitting the Plaintiff to remarry, but forbidding the Defendant to remarry any other person during the lifetime of the Plaintiff, except with the permission of the Court, and permitting the Plaintiff to resume the name of Helen Marie Lacy. Let Judgment be entered accordingly."

It further appears from the agreed statement of facts that judgment was entered in accordance with said Referee's Report, and became final in September, 1939. No appeal was ever taken from said New York State judgment. Anna Holmes Davis or Anna Holmes knew, at the time that the said Ernest H. Davis obtained a Decree of Divorce against his said wife, that

the said first wife was then living in Lockport and the said Anna Holmes Davis also knew that the first wife of the said Ernest H. Davis began divorce proceedings in the State of New York against him on the ground that he, the said Ernest H. Davis, was living in adulterous intercourse with the said Anna Holmes Davis.

Upon these facts, the Surrogate on October 7, 1942, rendered his decision, stating: " I am constrained here to hold that at the time of the death of Anna Holmes Davis, Ernest H. Davis was not her legal husband, and therefore his petition for the issuance of Letters of Administration upon her estate should be and is denied." He held that he must refuse to give effect within this State to the divorce decree obtained in Nevada by Ernest H. Davis against his wife, Helen M. Davis, a resident of Lockport. As authority for his conclusion he cited the opinion of this court in *Hubbard* v. *Hubbard* (228 N. Y. 81 at p. 85) that " the principle of comity between the states of the United States does not require of a state the operation of a divorce decree of a sister state which violates the principles of morality, or the public policy, or municipal regulations established by it. Apart from constitutional obligations the law of no state can have effect as law beyond the territory of the state imposing it, unless by permission of the state where it is allowed to operate."

In the case of *Hubbard* v. *Hubbard* (*supra,* p. 84) this court applied the " adjudged policy of this state to refuse to recognize as binding a decree of divorce obtained in a court of a sister state, not the matrimonial domicile, upon grounds insufficient for that purpose in this state, when the divorced defendant resided in this state and was not personally served with process and did not appear in the action." The court pointed out in its opinion that " it has been conclusively established that such policy is not hostile to the full faith and credit clause of the Federal Constitution. (Art. 4, § 1; *Haddock* v. *Haddock,* 201 U. S. 562.) " Relying upon the rule " conclusively established " in *Haddock* v. *Haddock,* the courts of this State have applied the same " adjudged policy " until December, 1942, when the Supreme Court of the United States in *Williams* v. *North Carolina* (317 U. S. 287, 303) reconsidered its decision in *Haddock* v. *Haddock* and expressly overruled it. The rule authoritatively established in the *Williams* case is that " when a court of one state acting in

accord with the requirements of procedural due process alters the marital status of one *domiciled in that state* by granting him a divorce from his absent spouse, we cannot say its decree should be excepted from the full faith and credit clause merely because its enforcement or recognition in another state would conflict with the policy of the latter.'' (Italics are new)

The courts of this State are bound to follow the rule as formulated by the Supreme Court of the United States in its most recent decision, for as that court pointed out in the same case, it '' is the final arbiter when the question is raised as to what is a permissible limitation on the full faith and credit clause '' of the Constitution of the United States. Thus, when the decree of the Surrogate's Court in the instant case was reviewed by the Appellate Division, that court was bound to give full faith and credit to a decree of a court of the State of Nevada granting to a person ''*domiciled in that state*'' a divorce from his absent spouse. Accordingly, the Appellate Division reversed the decree of the Surrogate's Court and held that the Nevada decree of divorce must be recognized in this State and that the marriage of Ernest H. Davis to the decedent in Nevada on the day the decree was granted is a valid marriage not only in Nevada, but in this State. We have emphasized the '' domicil '' of the person to whom a foreign divorce has been granted, because in *Williams* v. *North Carolina,* the court pointed out that upon the record in that case, it '' must assume that petitioners had a *bona fide* domicil in Nevada, not that the Nevada domicil was a sham.'' It then said: '' We thus have no question on the present record whether a divorce decree granted by the courts of one state to a resident, as distinguished from a domiciliary, is entitled to full faith and credit in another state. Nor do we reach here the question as to the power of North Carolina to refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada court, North Carolina finds that no *bona fide* domicil was acquired in Nevada.'' Until the Supreme Court of the United States decides the questions not reached in the *Williams* case, the exact scope and effect of the full faith and credit clause in relation to foreign divorce decrees remains to that extent without authoritative definition. Before we express any opinion upon the question left open in the *Wil-*

*liams* case we must decide whether upon the *record* in the instant case, the court must again " assume that petitioners had a *bona fide* domicil in Nevada, not that the Nevada domicil was a sham." (p. 302)

It must, of course, be plain that we cannot assume that Davis had a *bona fide* domicile in Nevada if he is bound by the findings of the referee in the New York action upon which the decree of divorce in favor of Helen M. Davis was based, for then these findings would establish affirmatively that Ernest H. Davis never abandoned his residence or domicile in New York and never established a domicil in Nevada. The appellant urges that even though the courts of this State might be bound by the Constitution of the United States to give full faith and credit to the Nevada judgment of divorce in a case where the validity of the subsequent marriage of the plaintiff in the foreign divorce action is an issue upon which the courts of this State may pass, yet in this case that issue has been conclusively determined against the husband by the judgment of divorce which the first wife subsequently obtained against him in this State.

Unquestionably in the divorce action in this State the primary issue determined by the court was that the foreign divorce was without effect in this State. The judgment might have been different if the case of *Williams* v. *North Carolina* had been previously decided. Even if we were to assume that under the principles formulated in that case the judgment is erroneous and would have been reversed as matter of course upon appeal, nevertheless the validity of the judgment could not be challenged after it became final and the issues decided therein could not be litigated again between the parties to the action or their privies. (*Chicot County Drainage District* v. *Baxter State Bank*, 308 U. S. 371; *Miller* v. *Tyler* 58 N. Y. 477.) Neither the decedent nor the appellant here were, however, parties to the action, though the decedent knew that such an action had been begun on the ground that Ernest H. Davis was " living in adulterous intercourse with " her. The divorce action was a proceeding *in rem* with respect to the status of the parties to the action and the judgment of divorce establishes that from that time the parties no longer bear the relation of husband and wife. To that extent the judgment is conclusive against all the world. The question

remains how far the findings of fact which the decree recites or upon which the judgment is necessarily based are binding upon one of the parties to the action in litigation with other persons who were not parties to the action.

The judgment of divorce obtained in New York by the first wife against Ernest H. Davis is necessarily based upon the fact that until then a valid marriage between the parties to the divorce action was in existence. If that fact was conclusively established not only as between the parties to the divorce action, but also as between the defendant in the divorce action and the woman whom he had married in Nevada and with whom he lived both before and after the judgment of divorce, then, of course, he cannot be heard now to assert that the Nevada decree of divorce dissolved the earlier marriage between himself and the wife who subsequently obtained a decree of divorce, and that no valid marriage existed between them when judgment of divorce was rendered in New York. If it is not conclusive in litigation between the husband and a person who was not a party to the divorce action, then we must give effect to the Nevada decree in accordance with the provisions of the Federal Constitution as now construed by the Supreme Court of the United States. The general rule applicable to proceedings *in rem* affecting a marital status has been formulated in the Restatement, by the American Law Institute, of the Law of Judgments, section 74:

" (1) In a proceeding *in rem* with respect to a status the judgment is conclusive upon all persons as to the existence of the status.

" (2) A judgment in such a proceeding will not bind anyone personally unless the court has jurisdiction over him, and it is not conclusive as to a fact upon which the judgment is based except between persons who have actually litigated the question of the existence of the fact." In accordance with that rule, this court has held that in an action for annulment of marriage brought against a wife by her third husband a decree of annulment of marriage granted by the courts of this State to her second husband on the ground that a Texas decree of divorce purporting to dissolve an earlier marriage between the wife and another man was invalid, was not a conclusive adjudication that the Texas decree was void and that the first marriage was still

valid at the time the second marriage was dissolved. (*Post* v. *Post,* 71 Misc. 44, affd. 149 App. Div. 452, opinion by McLaugh-lin, J., affd. without opinion 210 N. Y. 607.) That case cannot be distinguished successfully from the instant case. In each case a judgment *in rem* granted in New York in a matrimonial action purported to dissolve or annul a marriage and in each case the decree was based on a decision that a foreign decree of divorce purporting to dissolve an earlier marriage was invalid and that the earlier marriage was still valid. In both cases, after the New York court had rendered its judgment *in rem,* decisions of the Supreme Court of the United States in other cases authoritatively established that the foreign decree of divorce was entitled to full faith and credit in New York. In neither case could the later determination change the conclusive effect of the judgment *in rem* rendered in New York from which no appeal had been taken, but in neither case did the conclusive effect of the New York judgment *in rem* dissolving a marital status extend to the fact upon which the judgment was based that a valid marriage previously existed. (See, also, *Hendrick* v. *Biggar,* 209 N. Y. 440; *Townsend* v. *Van Buskirk,* 22 App. Div. 441, appeal dismissed, 162 N. Y. 265.)

In such cases we apply the rule that " as between strangers or between parties and strangers, a decree of divorce does not establish the previous validity of the marriage, since the *res* involved and adjudicated is the condition of subsequent single-ness of the parties and not the valid prior existence of marital relations between them." (2 Freeman on Judgments, § 910).

We find no support in principle or authority for the contention that Ernest H. Davis is estopped in some manner from again litigating the issues decided in the divorce action in this State between Ernest H. Davis and the wife he had married in 1926. He did not institute that divorce action in New York and under the adjudged policy of this State and the rules of law authoritatively established and consistently applied until discarded by the Supreme Court of the United States in *Williams* v. *North Carolina* (*supra*) he had no defense to that action even if he successfully proved that he had established a *bona fide* domicil in Nevada before he brought a divorce action there. Certainly it cannot be said that his failure to " interpose any defense " at the trial of that action mislead the decedent and induced her

to change her position. There was, in fact, no dispute between them and no issue which between themselves could have been litigated therein.

The question remains whether even though the findings of the referee in the divorce action brought in New York are not binding in this proceeding, the Nevada judgment has been otherwise impeached. In the case of *Lefferts* v. *Lefferts* (263 N. Y. 131) this court applied the rule then firmly established that the validity of a Nevada decree of divorce granted without personal service of the defendant may be *impeached by proof* that the plaintiff was not domiciled in Nevada; and that full faith and credit might be denied to a foreign decree purporting to adjudicate the marital status of a plaintiff who, it is shown, was not domiciled in the state of the forum, and a defendant who resides in New York and who was not personally served with process and did not appear in the action. In the case we are now reviewing, the appellant has not, in the agreed statement of facts, or by presentation or offer of evidence, except the decision of the referee in the divorce action, challenged the decision of the Nevada court that the plaintiff had acquired a domicile in Nevada sufficient to support the jurisdiction of that court to adjudicate his marital status. Though the appellant has consistently contended that the courts of this State may refuse to give full faith and credit to the Nevada decree she bases that contention primarily, if not exclusively, upon the decision of the Supreme Court of this State in the divorce action instituted here that the Nevada decree was invalid. Since that decision is, as we have said, not binding upon the respondent and since there is no other affirmative proof that the respondent was not domiciled in Nevada when he brought an action for divorce there, we must apply the rule long authoritatively established by the Supreme Court of the United States: "There can be no doubt that if full faith and credit were denied to a judgment rendered in another State upon a suggestion of want of jurisdiction, without evidence to warrant the finding, this court would enforce the constitutional requirement. See *German Savings and Loan Society* v. *Dormitzer, ante,* page 125." (*Rogers* v. *Alabama.* 192 U. S. 226 at p. 231, opinion by HOLMES, J.)

We have found no case in which this court has heretofore attempted to define the scope of the rule that a judgment of a

sister state granting the plaintiff a divorce from a spouse not domiciled in that state nor appearing in the action nor personally served with process there imports that the court had acquired jurisdiction to render a valid judgment *in rem* changing the status of the plaintiff. In many decisions the court has, however, assumed the existence of a presumption, in the absence of evidence to the contrary, that the court had jurisdiction to render judgment, though, doubtless, the validity of the judgment may be impeached by extrinsic evidence. (See *Kerr* v. *Kerr,* 41 N. Y. 272, 275; *Cross* v. *Cross,* 108 N. Y. 628, 630; *Matter of Kimball,* 155 N. Y. 62, 68.) Instinct in these and other decisions of this court is the rule that the foreign judgment of divorce will be given full force and effect as a judgment *in rem* dissolving the marriage of the plaintiff until impeached by evidence which establishes that the court had no jurisdiction over the *res.*

That rule is in accord with the great weight of judicial authority in this country. (See *Aarnes* v. *Aarnes,* 172 La. 648; *Howey* v. *Howey,* 240 S. W. 450 [Mo.], cert. denied, 260 U. S. 730; *Harrington* v. *Harrington,* 233 Mo. App. 390; *Commonwealth ex rel. Cronhardt* v. *Cronhardt,* 127 Pa. Super. 501, on rehearing, 135 Pa. Super. 117; *Goodloe* v. *Hawk,* 113 F. 2d, 753, 755, 756, App. D. C.; *Dry* v. *Rice,* 147 Va. 331, 338; *McFarland* v. *McFarland,* 179 Va. 418, 428.) A different rule has been applied in Massachusetts and perhaps some other jurisdictions, to foreign decrees of divorce. See *Commonwealth* v. *Blood* (97 Mass. 538); *Kelley* v. *Kelley* (161 Mass. 111); but cf. *Peaslee* v. *Peaslee* (147 Mass. 171, 180); *Corkum* v. *Clark* (263 Mass. 378, 382); but academic authority as well as the weight of judicial authority is opposed to the exclusion of foreign judgments of divorce from the benefit of the presumption of validity generally accorded to judgments of courts of general jurisdiction. (3 Freeman on Judgments, § 1426; 2 Black on Judgments, § 924; 2 Bishop, New Commentaries on Marriage, Divorce and Separation, § 1526.) The courts of this State have not refused to apply to judgments of divorce that general presumption.

The order should be affirmed, with costs to all parties payable out of the estate.

CONWAY, J. (dissenting). This is an appeal from a judgment and order of reversal of the Appellate Division, Fourth Depart-

ment, which directed the Surrogate to issue letters of administration to Ernest H. Davis upon the estate of Anna Holmes, also known as Anna Holmes Davis, deceased.

The decedent died in the City of Lockport, N. Y., on January 30, 1942. Her sister, Frances M. Lawson, filed a petition for her appointment as administratrix. The respondent, Ernest H. Davis, filed a cross-petition asking for his appointment as the husband of the deceased. He also filed an answer to the petition of the appellant Lawson alleging that he was the husband of the deceased.

The parties then entered into a stipulation by which they submitted a Statement of Facts to the court and stipulated as to the truth and correctness of that Statement. Upon that Statement of Facts the case has been decided. The Statement is reasonably short and it seems to me that it is necessary for a clear understanding that the Statement be quoted in full. It is as follows:

*" Statement of Facts*

" The deceased died in the City of Lockport, Niagara County, New York, on the 30th day of January, 1942. Ernest H. Davis, who claims to be the husband of the said deceased, had been previously married to one Helen M. Davis. That in the month of June, 1937, the said Ernest H. Davis went to Reno, Nevada, and there commenced an action for absolute divorce against the said Helen M. Davis. That in his complaint in Nevada, said Ernest H. Davis alleged that he and the said Helen M. Davis were married in New York State on October 18th, 1926, and that said Helen M. Davis resides at Lockport, New York. That said complaint alleged, as the only grounds for said divorce, ' That defendant has treated plaintiff with extreme cruelty, and that the acts of cruelty so committed by said defendant have caused plaintiff great mental anguish and physical pain, causing him to become sick and nervous, made his life miserable and unbearable, and further cohabitation with defendant impossible '. The said Helen M. Davis did not appear by attorney or in person and was not served personally with a summons, but was served by publication. On September 18th, 1937, the said Ernest H. Davis obtained a decree of absolute divorce against the said Helen M. Davis and *on the same day* the said

Ernest H. Davis married Anna Holmes in the Township of Reno, State of Nevada. The said decree of divorce obtained against the said Helen M. Davis was obtained by the said Ernest H. Davis on the grounds alleged in his complaint, which was not adultery.

" A short time after the said Ernest H. Davis married the said Anna Holmes Davis, they both moved to Lockport, New York, where they have continuously resided up until the time of the death of the said Anna Holmes Davis. In December, 1937, Helen M. Davis commenced an action in the Supreme Court of this state against the said Ernest H. Davis for absolute divorce on the ground of adultery, alleging specifically that the said Ernest H. Davis was living in adulterous relationship with the said Anna Holmes Davis. The said Ernest H. Davis filed an answer to this summons and complaint alleging, in substance, that the said Helen M. Davis refused to go to the western part of the United States with the said Ernest H. Davis in June, 1937, and that the said Ernest H. Davis did obtain a Nevada divorce from the said Helen M. Davis on grounds other than adultery, and that he married Anna Holmes Davis and that he and the said Anna Holmes Davis, after their marriage, came to Lockport, New York, and held themselves out to the public as husband and wife. That this matter was referred to a Referee and the said Referee reported:

' 1. That the same was duly brought on for hearing at the Court House in the City of Lockport, New York, on the 8th day of June, 1939, at ten o'clock in the forenoon of that day, pursuant to notice thereof duly served upon the Defendant and his attorney; that upon said hearing he was attended by David E. Jeffery, Counsel for the Plaintiff, and by Joseph Speranza, Counsel for the Defendant, who stated in open court and for the record that *no defense would* be interposed by the Defendant; that he has heard the evidence and testimony and after due deliberation being thereupon had, makes and returns the following decision upon the questions of fact and law involved and finds the following:

' *Finding of Fact*

' 1. That the Plaintiff and the Defendant herein were married at the Town of Stafford, Genesee County, New York, on the 18th day of October, 1926.

' 2. That the Plaintiff and the Defendant have ever since their said marriage been and now are *actual residents and inhabitants of the City of Lockport, Niagara County, New York.*

' 3. That on and subsequent to the 18th day of September, 1937, the Defendant herein has committed adultery by living in adulterous intercourse with a female known as Anna Holmes or Anna Davis at 179 Park Avenue, in the said City of Lockport, New York, and,

' 4. That the said acts of adultery have been committed without the consent, connivance, privity or procurement of the Plaintiff.

' 5. That the Plaintiff has not voluntarily co-habited with the Defendant since the discovery of the said act of adultery.

'6. That five (5) years have not elapsed since the discovery of said act of adultery by the Plaintiff.

' 7. That the Plaintiff has not forgiven nor condoned the said act of adultery.

' 8. That no decree of divorce has been granted against either Plaintiff or Defendant in any of the Courts of any State or Territory of the United States or of any foreign country and that no action for divorce has ever been brought by either of the parties against the other, except that the Defendant procured an alleged decree of divorce against the Plaintiff in an action brought by him, as Plaintiff, in 1937, in the District Court of the State of Nevada, in which action the Plaintiff did not appear in any manner.

' *Conclusions of Law.*

' 1. That the Plaintiff is entitled to final judgment, unless the Court shall otherwise order in the meantime, three months after the filing of the decision herein and the entry of interlocutory judgment dissolving the marriage between the Plaintiff, Helen M. Davis, and the Defendant, Ernest H. Davis, which was solemnized on the 18th day of October, 1926, and divorcing the parties on the ground of Defendant's adultery and permitting the Plaintiff to remarry, but forbidding the Defendant to remarry any other person during the lifetime of the Plaintiff, except with the permission of the Court, and permitting the Plaintiff to resume the name of Helen Marie Lacy.

' Let judgment be entered accordingly.'

" That judgment was entered in accordance with said Referee's Report, and became final in September, 1939. That no appeal was ever taken from said New York State Judgment.

" That Anna Holmes Davis or Anna Holmes knew at the time that the said Ernest H. Davis obtained a decree of divorce against his said wife that the said first wife was then living in Lockport, and that the said Anna Holmes Davis also knew that the first wife of the said Ernest H. Davis began divorce proceedings in the State of New York against him on the ground that he, the said Ernest H. Davis, was living in adulterous intercourse with the said Anna Holmes Davis.

" After the death of the said Anna Holmes Davis, Frances M. Lawson petitioned this Court for Letters of Administration and, among other persons cited the said Ernest H. Davis as being the alleged husband of the deceased. On March 7th, 1942, the said Ernest H. Davis made application to this Court for Letters of Administration on the estate of the above named deceased alleging, among other things, that he was the husband of said deceased. On the same date he filed an answer to the petition of the said Frances M. Lawson alleging, in substance, that he was the husband of the said deceased and entitled to Letters of Administration in preference to the said Frances M. Lawson.

" Who is entitled, under these facts, to Letters of Administration? "

That concludes the Statement of Facts. It is quoted in its entirety because upon it alone must rest our decision.

There are three litigations which must be considered by us. *First,* the action for divorce by the respondent Davis against Helen M. Davis, to whom he was married in Genesee County, N. Y., in October, 1926. That was the action brought in the State of Nevada. *Second,* the subsequent action brought in the State of New York by Helen M. Davis against the respondent Davis, for divorce in 1937 in the Supreme Court of this State. *Third,* the present litigation involving the attempt by respondent Davis to have himself declared to be the husband of Anna Holmes, deceased, so as to be entitled under Surrogate's Court Act, section 118, to letters of administration as " the surviving husband " and to obtain such property of the deceased as a surviving husband may take under the Decedent Estate Law.

It is urged that we must uphold the Nevada divorce of the respondent because in a recent case (*Williams* v. *North Carolina,* 317 U. S. 287, 303), the Supreme Court of the United States laid down the rule that " when a court of one state acting in accord with the requirements of procedural due process alters the marital status of *one domiciled in that state* by granting him a divorce from his absent spouse, we cannot say its decree should be excepted from the full faith and credit clause merely because its enforcement or recognition in another state would conflict with the policy of the latter " and expressly overruled *Haddock* v. *Haddock* (201 U. S. 562).

Assuming that *Haddock* v. *Haddock* has been overruled (cf. Professor Joseph W. Bingham, September, 1943, Cornell Law Quarterly, volume XXIX, page 1), that was the only case overruled. That means that hereafter either party to a marriage contract no matter which is at fault may acquire a new domicile and that the state of such *new domicile* may grant a divorce for a cause satisfactory to its Legislature upon constructive service. To that extent our public policy or " our own interpretation of the conflict of laws " (*Dean* v. *Dean,* 241 N. Y. 240, 243, CARDOZO, J.) has been affected by the public policy of another state. It has not been changed. Our public policy remains the same. This court has declared it many times: In *People* v. *Baker* (1879) (76 N. Y. 78, 88); in *Hubbard* v. *Hubbard* (1920) (228 N. Y. 81, 85). The Supreme Court of the United States did not attempt to take from us in this State our freedom to declare our own State policy. What it did in the *Williams* case in reality was to grant to a married woman the power to acquire a domicile apart from her husband " coequal with his to acquire one apart from her, at least so far as the matter of divorce jurisdiction is involved under the full faith and credit clause." (See " *The Bones of Haddock* v. *Haddock,*" by Professor Holt in Michigan Law Review, June, 1943, vol. 41, p. 1021.)

It is true that we must follow the decision of the Supreme Court of the United States but it has no bearing on the instant case. The Supreme Court of *this* State has determined that the appellant was never domiciled in Nevada. That cannot be attacked collaterally by the respondent who aided in the obtaining of that judgment by appearing through attorney and asserting that he would interpose no defense, was not interested in

the Nevada decree and waived it. The respondent had the opportunity to assert and prove that he had been domiciled in Nevada. That issue was tendered to him in the New York action. He not only declined the tender but in effect conceded the contrary and by words and conduct personally and by attorney induced our court to find to the contrary. The truly remarkable thing about his Statement of Facts is that nowhere in it is it stated that the respondent claims now or ever claimed to be either a resident or domiciled in Nevada at any time — neither in the statement of what the complaint of respondent in Nevada alleged nor in the statement of what his answer in the New York action alleged, although it is given " in substance ", nor in his answer in this proceeding which is given " in substance ". We stress this because it goes to the foundation of our disagreement. Thus, it is urged in the majority opinion that the appellant has offered " no other affirmative proof that the respondent was not domiciled in Nevada when he brought an action for divorce there " except our State Supreme Court decision in the action of Helen M. Davis against the respondent and that a presumption exists that the Nevada court had jurisdiction to render judgment " though, doubtless, the validity of the judgment may be impeached by extrinsic evidence ". What we stress is that the decision of this case must rest upon the Statement of Facts joined in by him and nowhere therein is it stated that the respondent ever claimed or now claims that he was resident or domiciled in Nevada. The appellant could not prove a negative. The New York judgment adjudicated that respondent was always domiciled in New York. It is not a matter of extrinsic but intrinsic evidence and the Nevada judgment has not been stipulated before us.

Our right, when domicile is a jurisdictional fact, to re-examine an uncontested determination of that issue, elsewhere, is not affected by the *Williams* case. (*Andrews* v. *Andrews,* 188 U. S. 14; *German Savings & Loan Society* v. *Dormitzer,* 192 U. S. 125, 128.) In the last mentioned case the court (HOLMES, J.) said at page 128: " It is too late now to deny the right collaterally to impeach a decree of divorce made in another State, by proof that the court had no jurisdiction, even when the record purports to show jurisdiction and the appearance of the other party. *Andrews* v. *Andrews,* 188 U. S. 14, 39; s. c. 176 Massa-

chusetts 92, 93. An attempt was made to avoid the authority of *Andrews* v. *Andrews* by the suggestion that there the respondent in the divorce suit had disappeared before the decree. But a respondent cannot defeat jurisdiction by disappearing. Indeed in strictness only the attorney disappeared, and the respondent simply ceased to defend the suit. The effect given to the statute of Massachusetts in that case depended wholly on contradicting the record of the divorce suit and proving the want of jurisdiction by proving the libellant's want of domicile in the State.

" It very well may be that, if the Supreme Court of Washington had undertaken to deny the jurisdiction of the Kansas tribunal without evidence impeaching it, such an evasion of the Constitution would not be upheld. It may be that in fact some circumstances were adverted to by that court which hardly warranted an inference. But it had before it the testimony of the husband, Tull, from which it appeared that before he made the contract for a part of the land in question he had sold out his property and business in Kansas and had gone in search of what he called a new location, and that when he bought this land he decided to locate there. The land, it will be remembered, is in Spokane, Washington. Tull was there when the contract was made, and therefore there was ground for the court to find that at that moment he changed his domicile to Spokane. The contract was made on December 28, 1886, and the libel for divorce in Kansas was not filed until February 25, 1887. There was evidence warranting the finding, and that being so we take the facts as they were found. *Egan* v. *Hart,* 165 U. S. 188.''

The *Williams* case did not change the rule of the *Andrews* and *German Savings and Loan Society* cases. On the contrary Justice DOUGLAS quoted from *Davis* v. *Davis* (305 U. S. 32, 40) which cited *Andrews* v. *Andrews* (*supra*). We have cited the *Andrews* and *German Savings & Loan Society* cases because it is important to note that in each case the decree was attacked by third parties — in the former by the second wife; in the latter by heirs of the deceased second wife. The appellant is equally free to attack it here.

Desirous of making clear that there was to be no impairment of that right of re-examination of the question of jurisdiction and that the doctrine of *Andrews* v. *Andrews* (*supra*) and *Bell* v. *Bell* (181 U. S. 175) was not to be impaired by the *Williams*

case, Mr. Justice DOUGLAS stressed many times in his opinion that there was to be no question but that Williams was *domiciled* in Nevada. We quote but five of them as follows:

1. " But there are two reasons why we do not reach that issue [the rule in *Bell* v. *Bell* where there was no domicile of either spouse] in this case. In the first place, North Carolina does not seek to sustain the judgment below on that ground. Moreover it admits that there probably is enough evidence in the record to require that petitioners be considered ' to have been actually domiciled in Nevada.' " (p. 291.)

2. " Rather, we must treat the present case for the purpose of the limited issue before us precisely the same as if petitioners had resided in Nevada for a term of years and had long ago acquired a permanent abode there." (p. 292.)

3. " It is difficult to perceive how North Carolina could be said to have an interest in Nevada's *domiciliaries* superior to the interest of Nevada. Nor is there any authority which lends support to the view that the full faith and credit clause compels the courts of one State to subordinate the local policy of that State, as respects *its domiciliaries,* to the statutes of any other State." (p. 296.)

4. " The historical view that a proceeding for a divorce was a proceeding *in rem* (2 Bishop, Marriage & Divorce, 4th ed., § 164) was rejected by the *Haddock* case. *We likewise agree that it does not aid in the solution of the problem presented by this case to label these proceedings as proceedings in rem.* Such a suit, however, is not a mere *in personam* action. *Domicil* of the plaintiff, immaterial to jurisdiction in a personal action, is recognized in the *Haddock* case and elsewhere (Beale, Conflict of Laws, § 110.1) as essential in order to give the court jurisdiction which will entitle the divorce decree to extraterritorial effect, at least when the defendant has neither been personally served nor entered an appearance. The findings made in the divorce decrees in the instant case must be treated *on the issue before us as meeting those requirements.* For it seems clear that the provision of the Nevada statute that a plaintiff in this type of case must ' reside ' in the State for the required period requires him to have a domicil, as distinguished from a mere residence, in the State." (pp. 297, 298.)

5. " This Court, of course, is the final arbiter when the ques-

tion is raised as to what is a permissible limitation on the full faith and credit clause. (citing cases.) But the question for us is a limited one. In the first place, we repeat that *in this case* we must assume that petitioners had a bona fide domicil in Nevada, not that the Nevada domicil was a sham. We thus have *no question on the present record* whether a divorce decree granted by the courts of one State to a *resident*, as distinguished from a *domiciliary*, is entitled to full faith and credit in another State. Nor do we reach here the question as to the power of North Carolina to refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada Court, *North Carolina finds that no bona fide* domicil was acquired in Nevada." (p. 302.)

It is quite apparent that this State had full power to make its findings in our Supreme Court in the action of Helen M. Davis against the respondent, that Nevada had no jurisdiction in the action brought there by the respondent against Helen M. Davis. That is conceded in the majority opinion which states: "Unquestionably in the divorce action in this State the primary issue determined by the court was that the foreign divorce was without effect in this State." We had the power to so hold (*Andrews* v. *Andrews, supra; Bell* v. *Bell, supra*), and we so held. Our courts found that respondent had not been resident or domiciled in Nevada at the time he brought his action there against his wife. We cannot, therefore, subscribe to the reasoning which proceeds upon the premise that neither the decedent nor her sister, the appellant, was a party to the Nevada and New York actions. We have already pointed out that that is not essential in order for them to attack the Nevada judgment (*Andrews* v. *Andrews, supra; German Savings & Loan Society* v. *Dormitzer, supra*) but at any rate the *respondent* was a party and is bound by the New York judgment.

Moreover, when we address ourselves to the findings and judgment of our Supreme Court, determining that respondent never was a resident of the State of Nevada, we reach an unbroken line of cases holding that when a party induces or leads a court of our State to render a judgment in litigation to which he is a party, he may not thereafter in order to obtain property, and thus profit, or to avoid payment of an obligation,

contend that the court was without jurisdiction to render the judgment or rendered an improper judgment. In the instant case the respondent indicated in open court that he was not interested in the Nevada decree, that he did not care to urge that it was valid and that he had no defense to the rendition of a judgment against him in our courts in the action then on trial. Where the issues were (1) that he had not been domiciled in Nevada and (2) that he was living in adultery with a woman not his wife (the decedent), one would think, unless there was some reason not disclosed in the Statement of Facts for not doing so, that respondent would at least have litigated the latter issue but on the contrary he said he would interpose no defense to it. Now in order to obtain the property of decedent Anna Holmes he wishes to say that he did have a defense to the divorce action brought against him in New York by Helen M. Davis, that the decree in Nevada was a valid one and decedent was then his wife. The principle involved is that one who submits himself to the jurisdiction of the court and by conduct or in words asks for the rendition of a judgment either for or against him, cannot thereafter be heard in a collateral action or proceeding to question the jurisdiction of the courts or to urge that the judgment so obtained is a nullity. (*Starbuck* v. *Starbuck*, 173 N. Y. 503, 506; *Krause* v. *Krause*, 282 N. Y. 355; *Assets Realization Co.* v. *Roth*, 226 N. Y. 370; *State National Bank* v. *Northwestern Union Packet Co.*, 35 Iowa 226; *Bell* v. *Little*, 204 App. Div. 235, 237 N. Y. 519; *Brown* v. *Brown*, 242 App. Div. 33, affd. 266 N. Y. 532; *Hynes* v. *Title Guarantee & Trust Co.*, 273 N. Y. 612.) In *Starbuck* v. *Starbuck* (173 N. Y. 503, 506) a wife attempted to obtain dower in the property of one of whom she claimed to be the widow. She had previously obtained an invalid decree of divorce. We said: " * * * the principle is well established that, where a party has procured a judgment or decree to be entered, submitting himself to the jurisdiction of the court, he cannot thereafter be heard to question the jurisdiction of the court which entered the judgment or decree." In *Krause* v. *Krause* (*supra*, p. 363) we applied the rule after a full consideration of the cases. The interesting point about that case is that the dissenting judges pointed out the validity of that rule in non-matrimonial actions. It was said: " *Starbuck* v. *Starbuck; Bell* v. *Little; Brown* v.

*Brown* and *Hynes* v. *Title Guarantee & Trust Co.*, were not matrimonial actions. These were private suits. The claim in each case — though predicated of a marriage — was personal to an individual party. Hence room was found for consideration of equitable inducements conceived as affecting only the several parties to the litigation. (So, *Matter of Swales*, 60 App. Div. 599; 172 N. Y. 651.) '' On that we were unanimous. *The instant case is a non-matrimonial proceeding.*

The matter could be no more clearly put than in the opinion of Mr. Justice LEWIS, *Matter of Bingham*, 265 App. Div. 463, 465, 466 (2nd Dept.):

'' The *Williams* case is not controlling. The ' divorcees ' in that case went from their homes in North Carolina to Las Vegas, Nevada, and took up residence at an auto court there to satisfy the Nevada residence requirements. The majority opinion rested upon the admission of the North Carolina Attorney-General that ' there probably is enough evidence in the record to require that petitioners be considered '' to have been actually domiciled in Nevada.'' ' But the majority expressly preserved the doctrine of *Bell* v. *Bell*, 181 U. S. 175, which Mr. Justice DOUGLAS stated was ' a case in which this Court held that a decree of divorce was not entitled to full faith and credit when it had been granted on constructive service by the courts of a state in which neither spouse was domiciled.' The majority opinion did not reach ' the question whether North Carolina could refuse to recognize the Nevada decrees because in its view and contrary to the findings of the Nevada court petitioners had no actual, *bona fide* domicil in Nevada * * *.' * * * Since neither the appellant nor the decedent was domiciled in Nevada, the courts of this State are not required, even under the *Williams* case, to grant full faith and credit to the Nevada decree.

'' The policy enunciated is *Lefferts* v. *Lefferts*, 263 N. Y. 131, requires the courts of this State to pass upon the *bona fides* of the residence of divorcees. That policy was not impaired by the decision in the *Williams* case, which expressly reserved the question whether the courts of one State might refuse to recognize the findings of the courts of another State as to domicile. All that the majority purported to do in the *Williams* case was to overrule *Haddock* v. *Haddock*, 201 U. S. 562,

and to remove from the question of full faith and credit consideration of the subsidiary question whether the person who had removed from the matrimonial domicile had wrongfully done so. The Supreme Court of the United States, in the *Williams* case, did not eliminate domicile as a foundation for jurisdiction.

'' Since there is support for the Surrogate's finding that the decedent did not acquire a *bona fide* residence in Nevada, it is not necessary to pass upon the respondents-executors' contention that the matrimonial domicile was ' severed and terminated ' by the separation agreement entered into by the decedent and appellant.''

Here we have very much more than a Surrogate's finding that the respondent Davis did not acquire a *bona fide* residence in Nevada. We have here as stipulated findings of fact (1) that the respondent Davis and Helen M. Davis were married in Genesee County on October 18, 1926, (2) that they had been from the time of their marriage up to the date of the decree of the Supreme Court of this State in the divorce action brought by Helen M. Davis *"actual residents and inhabitants of the City of Lockport, Niagara County, New York."* That was a finding that from the time of the marriage between the respondent Davis and Helen M. Davis to a time subsequent to the alleged Nevada divorce the respondent Davis was continuously domiciled in this State and not in Nevada. But beyond that, the 8th finding of fact in that action has been stipulated and that finding is one that no decree of divorce had been granted against either Helen M. Davis or the respondent Davis in any court of any State in the United States and that not even an action for divorce had been brought by either Helen M. Davis or the respondent Davis except one in which the latter had procured an alleged decree of divorce in an action in Nevada in which Helen M. Davis had not appeared in any manner. Those were findings by a court of competent jurisdiction of this State having jurisdiction both of the parties and of the subject matter (Civ. Prac. Act, § 1147) that there was no valid decree of divorce theretofore existing between Helen M. Davis and the respondent and that there never had been a domicile acquired by the respondent Davis outside the State of New York.

Therefore far from being required to assume that the respondent Davis had a *bona fide* domicile in Nevada, we have a finding and a judgment thereon by the Supreme Court of this State that the respondent Davis never had a domicile in Nevada. Not only was that judgment never appealed from but under the Statement of Facts it is clear that the respondent Davis, by his answer and by his appearance through counsel and the statement of the latter to the court conceded in effect that the alleged divorce decree obtained by him in Nevada was invalid. We may not know all of the reasons which induced him to take that position and we may not speculate upon them. There may have been other reasons known both to him and to the deceased, Anna Holmes Davis, which made that Nevada decree invalid. Even after the entry of the divorce decree in the State of New York when he and the deceased, Anna Holmes Davis, could have married and become husband and wife in this State, no permission of the court was sought to enable them to marry here and no marriage was solemnized elsewhere and it will be remembered that the divorce decree in this State was granted because the defendant was living with the deceased, Anna Holmes Davis, to whom he was not married. That was the finding of *our* court.

To sum it up briefly, the position of the majority and our answer to it is this: the judgment of a superior court of general jurisdiction, foreign as well as domestic (*Ferguson* v. *Crawford,* 70 N. Y. 253, 257) is attended by a presumption of regularity and validity (*Bosworth* v. *Vandewalker,* 53 N. Y. 597, 599) including jurisdiction of the person and of the subject matter (*Bosworth* v. *Vandewalker, supra,* pp. 597, 599, 600) and that, although the jurisdiction of the foreign court is open to collateral attack (*Bosworth* v. *Vandewalker, supra; Matter of National Surety Co.* [*Laughlin*], 283 N. Y. 68, 77) such attack must be by evidence extrinsic or dehors the record. (*Ferguson* v. *Crawford, supra.*)

The answer is that jurisdiction of the subject matter is always open to attack (*Ferguson* v. *Crawford, supra; O'Donoghue* v. *Boies,* 159 N. Y. 87, 98; *Matter of Doey* v. *Howland Co.,* 224 N. Y. 30, 38, 39), may not be conferred by waiver or consent (*Robinson* v. *Oceanic Steam Navigation Co.,* 112 N. Y. 315, 324; *Matter of Walker,* 136 N. Y. 20) and may be raised at any

stage of the proceedings, even on its own motion by an appellate court (*Robinson* v. *Oceanic Steam Navigation Co., supra; Matter of Doey* v. *Howland Co., supra*) and may be based solely upon the face of the proceedings of the foreign court without resorting to extrinsic proof. (*O'Donoghue* v. *Boies, supra,* p. 99.) In the present case, the stipulated facts constitute or are the equivalent of that foreign court record and present the only evidence of it. Those stipulated facts show conclusively that the parties, including the respondent, to the Nevada action were continuously at all the times in question residents of New York and that, therefore, under the laws of Nevada its courts could not have acquired jurisdiction of the subject matter with the result that the Nevada judgment is void and a nullity. (*O'Donoghue* v. *Boies, supra,* pp. 98, 99.)

Again the majority holds that the Nevada action is one *in rem,* affecting status or the marital relation of respondent and his then wife, Helen M. Davis, and is binding upon all the world. Inconsistently it seems to us they also hold that the New York action of Helen M. Davis against respondent, resulting in a judgment of divorce between them, is binding only as between the parties and is not available to third persons, such as the decedent and her sister. Yet the New York action is as much a proceeding *in rem,* affecting the New York marital relation and status as much as the Nevada judgment, if attended with jurisdiction, could or did. The New York judgment must also, following the reasoning of the majority, be attended by a presumption of regularity and must also be binding upon all the world and not merely the parties and their privies. Since, then, this later New York judgment dissolving the marriage is one *in rem,* it necessarily binds all the world to its determination of the dissolution of the marriage between Helen M. Davis and respondent and all the consequences flowing therefrom. It seems to us that the majority conclusion rests solely upon an unwarranted *presumption* of the validity and jurisdiction of the Nevada judgment and court which presumption is destroyed by the *specific finding* in the New York action of continuous residence in New York at all times of both parties and the further specific finding and conclusion of invalidity of the Nevada judgment. A rebuttable presumption cannot override the specific fact so found.

As affecting status, all the world is bound by the finding and judgment rendered by our State Supreme Court. It seems to us that, even within the majority statement, the finding and judgment by our State Supreme Court is sufficient *extrinsic* evidence so as to destroy the *presumption* of regularity and jurisdiction of the Nevada court which it is urged should be applied following the *Williams* decision.

The majority assert that the New York rule of policy, the basis of such decisions as *Matter of Kimball* (18 App. Div. 320, 324, affd. 155 N. Y. 62) is no longer applicable or in existence, inasmuch as the *Williams* case in overruling *Haddock* v. *Haddock* has held that, as to a plaintiff actually in good faith domiciled in Nevada, a judgment of divorce granted without the appearance or the service of process within that State, was valid within that State and binding upon the courts of all other states, including that of the marriage, where defendant had remained domiciled. This is followed by the majority's resulting holding that the presumption of regularity and jurisdiction attaching to the Nevada judgment — not present here except by the stipulated facts — must prevail because no *extrinsic* evidence was given in the New York action to disprove jurisdiction.

The answer it seems to us is that the *Williams* case is inapplicable, as pointed out above, because there the actual domicile was found while here in the New York action facts were found making it impossible for respondent to have been either a resident or a domiciliary of Nevada or other than of New York. In the *Williams* case the United States Supreme Court declared that it did not reach the question of the power of a state to find that, contrary to the findings of the Nevada court, no *bona fide* domicile was acquired in Nevada. Accordingly, the finding of our State Supreme Court in the action against respondent by Helen M. Davis is not within any rule laid down in the *Williams* case calling for the application, contrary to New York's policy, of the Nevada judgment.

The majority seek to avoid the effects of this law of judgments by the theory, applied in *Post* v. *Post* (71 Misc. 44, affd. 149 App. Div. 452, affd., no opinion, 210 N. Y. 607) that the New York decree of divorce does not involve any adjudication as to prior relations of the parties and, although binding upon

the world as affecting status, it affects strangers only to the extent of determining the *res* involved which is the '' condition of subsequent singleness of the parties and not the valid prior existence of marital relations between them ''. However, in that case there was a sufficient finding to support the jurisdiction of the court when it issued its judgment. Texas was the *matrimonial domicile* of the defendant Post and her first husband, Keaghey, and we held that the divorce decree granted in Texas was valid and binding here. (See '' The Recognition of Foreign Divorce Decrees in New York State '' by Dean Howe, 40 Columbia Law Review 373, 387.) At the time of that Texas decree as far as the record discloses neither the defendant Post nor Keaghey (1) had ever been a resident of this State nor (2) married within this State. (See Civ. Prac. Act, § 1147.) The courts of this State never have interfered in such an instance. In the *Post* case there was no question but that Texas· was the *matrimonial domicile* of the defendant Post and Keaghey when the latter obtained the divorce there. In contrast in the instant case there was no jurisdiction in Nevada and therefore no judgment to be credited and a presumption cannot give life to that which is a nullity.

In the cases cited in the *Post* opinions and those given to sustain it, we find instances where either there were strangers to the record who were held not to be injured by the judgment and so without right to impeach it by proof of fraud, such as *Ruger* v. *Heckel* (21 Hun, 489, affd. 85 N. Y. 483, and *Hall* v. *Hall,* 139 App. Div. 120) or where the stranger to the record was held not bound by the judgment and so not to be impeded by it in protecting legal rights, such as *Townsend* v. *Van Buskirk* (22 App. Div. 441, appeal dismissed 162 N. Y. 265, and *Hendrick* v. *Biggar,* 209 N. Y. 440). In cases such as these latter, the doctrine acted as a shield whereas in the instant case it acts as a sword. ' The reason for such decisions seems clearly to be that a judgment so rendered may not be used by a *prevailing* party to the prejudice of a nonparty or stranger but that the latter shall be entitled to his day in court upon evidence and proof other than the judgment in the action in which he did not appear or participate. Even conceding the rule we think it is being applied in reverse because it is being held that a *defeated* party who is concluded by the New York judg-

ment of divorce determining that he is not and was not the lawful husband of the decedent, is now being permitted to share in the decedent's estate on the theory that she was not a party to either the Nevada or New York actions and thus the respondent may claim to have been her lawful husband at the time of her death. In other words contrary to the asserted rule in *Post* v. *Post* (*supra*) the Nevada judgment is being used against the decedent and her sister although the decedent was not a party to the action resulting in that judgment.

The judgment and order should be reversed, with costs and the order of the Surrogate reinstated.

LOUGHRAN, DESMOND and THACHER, JJ., concur with LEHMAN, Ch. J., CONWAY, J., dissents in opinion in which RIPPEY and LEWIS, JJ., concur.

Order affirmed, etc.